J. A., Petitioner,

v.

## DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2005.

Decided March 1, 2005.

Publication Ordered May 5, 2005.

Josephine Armstrong, petitioner, pro se.

Howard Ulan, Harrisburg, for respondent.

BEFORE: McGINLEY, J., and COHN JUBELIRER, J., and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

J.A. petitions, pro se, for review of an order entered by the Secretary of the Department of Public Welfare (Secretary), who, after granting reconsideration, upheld an earlier determination of the Bureau of Hearings and Appeals (Bureau) to dismiss, as untimely, J.A.'s appeal from a designation as an "Indicated" perpetrator of child abuse. We must decide if J.A. should be permitted to file a *nunc pro tunc* appeal.

On December 4, 1995, the Philadelphia County Office of Children, Youth and

Families completed a Child Protective Services Investigation Report (Report) identifying J.A. as an "Indicated" perpetrator of child abuse against K.A, her then fifteen-year old son.[1] In a letter dated December 27, 1995 (Notice), the Bureau notified J.A. that if she believed the Report was inaccurate, she could request, in writing, within 45 days of the date of the Notice, that the Report be amended or destroyed. (Bureau Ex. 2.) However, J.A. did not file an appeal until *eight years later*, when she sent in an appeal request dated September 11, 2003 and postmarked September 16, 2003.[2]

Warren Lewis, the Director of the Division of State Services of the Office of Children Youth and Families, replied to J.A.'s September 2003 letter, informing her that her appeal could not be reviewed because it was untimely under the 45–day limitation set forth in Section 6341(a)(2) of the Child Protective Services Law (CPSL), 23 Pa.C.S. § 6341(a)(2). He also advised her that if she believed her appeal should be considered, even though it did not bear a timely postmark, she should submit a written request to the Bureau. Claimant submitted such a request by letter dated November 13, 2003 and received on November 17, 2003.

The matter was then referred to the Director of the Bureau, who assigned an adjudicating officer to determine whether the appeal should be dismissed as untimely. The adjudicating officer reviewed the Report, the Notice, correspondence between J.A. and Director Lewis, and a December 15, 2003 letter from J.A.'s then counsel. Unfortunately, this letter is miss-

---

**1.** Section 6303 of the Child Protective Services Law (CPSL) defines an "Indicated report" as:

A child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:
    (1) Available medical evidence.
    (2) The child protective service investigation.
    (3) An admission of the acts of abuse by the perpetrator.
23 Pa.C.S. § 6303. In this case, the Report stated, under the description of injury, "[c]hild stabbed in the left hand by alleged perpetrator. Child has cut on the dorsal lateral aspect of left hand, requiring four stitches." The Report also stated, as the basis for the Indicated status, that Child Protective Services conducted an investigation and that J.A. admitted the incident. The Report reads:
This case is being indicated as the above child stated he suffered severe pain. Also the alleged perpetrator admitted cutting the child on the left hand with a kitchen knife. Child received stitches to his left hand as a result of this incident. Perpetrator stabbed child during an altercation, as a form of discipline.

The action, as described above, would constitute "child abuse," which is defined to include "[a]ny recent act or failure to act by a perpetrator which causes nonaccidental serious physical injury to a child under 18 years of age." Section 6303(b)(1)(i) of the CPSL, 23 Pa.C.S. § 6303(b)(1)(i).

Persons who are found to be perpetrators in Indicated reports have their names placed in a statewide central register of child abuse. Sections 6331 and 6338(a) of the CPSL, 23 Pa.C.S. §§ 6331, 6338(a). Further, Section 6344(b)(2) of the CPSL provides that child care administrators "shall require [prospective employees] to submit with their [employment] applications . . . [a] certification from the department as to whether the applicant is named in the central register as the perpetrator of a[n] . . . indicated report of child abuse." 23 Pa.C.S. § 6344(b). Persons who are listed as perpetrators in Indicated reports are not *automatically* excluded from child care employment, as are those who are the subjects of Founded reports, which require a criminal adjudication of guilt, *see* Sections 6344(c)(1) and 6303 of the CPSL, 23 Pa.C.S. §§ 6344(c)(1), 6303, but their status can still be a basis to deny them child care related employment.

**2.** This document is stamped "Received" September 17, 2003.

ing from the certified record. However, in her proposed adjudication, the adjudicating officer discusses this December 15th letter, in which J.A.'s counsel apparently stated that, at the time the Notice was mailed to J.A., she was living in a homeless shelter and mail addressed to residents was reviewed first by shelter staff and then provided to residents during meetings with shelter staff and case managers.[3] The letter contends that shelter staff did not give the Notice to J.A. After reviewing this evidence, but without conducting a hearing, the adjudicating officer submitted a Proposed Adjudication recommending that the case be dismissed because: 1) the appeal was untimely, 2) the facts were undisputed, and 3) J.A. did not proffer any legally cognizable basis to justify *nunc pro tunc* relief.

The Bureau agreed with this recommendation and dismissed the appeal. J.A. sought reconsideration, which the Secretary granted. Thereafter, on July 19, 2004, the Secretary upheld the original Bureau decision dismissing the appeal. J.A. then appealed to this Court. On appeal J.A. asserts that her request for a hearing should be granted because she never received the Notice. This assertion rests on the assumption that *nunc pro tunc* relief is warranted here, an issue we must now decide.

The law regarding *nunc pro tunc* appeals is well established and "failure to timely appeal an administrative agency's action is a jurisdictional defect; consequently, the time for taking an appeal cannot be extended as a matter of grace or mere indulgence...." *H.D. v. Dep't. of Pub.Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth.2000) (citations omitted). A *nunc pro tunc* appeal may be allowed where extraordinary circumstances involving fraud or some breakdown in the administrative process caused the delay in filing, or where non-negligent circumstances related to the appellant, his or her counsel or a third party caused the delay. *Cook v. Unemployment Compensation Bd. of Review*, 543 Pa. 381, 671 A.2d 1130 (1996).[4]

The issue before us is whether there are extraordinary circumstances or non-negligent conduct that constitutes a legal basis to permit J.A. to a *nunc pro tunc* appeal.[5] J.A. alleged that she first learned that her name appeared on the central register of child abusers after she applied for a job with a drug and rehabilitation center in August 2003. (J.A.'s Letter of November 13, 2003; Pet'r. Br. at 4.) Thereafter, she contacted the Department, in a letter dated September 11, 2003, "asking for an appeal." On October 15, 2003, Director Lewis answered J.A.'s letter and explained that her request was untimely

---

3. The address on the Notice is not that of the homeless shelter.

4. A party seeking permission to file a *nunc pro tunc* appeal also needs to establish that: (1) she filed the appeal shortly after learning of and having an opportunity to address the untimeliness; (2) the elapsed time is one of very short duration; and (3) the respondent will not suffer prejudice due to the delay. *H.D. v. Dep't. of Pub.Welfare*, 751 A.2d 1216, 1219 (Pa.Cmwlth.2000). The question of whether the appealing party established entitlement to a *nunc pro tunc* appeal is a legal conclusion to be drawn from the evidence in

the record and is fully reviewable by this Court. *Id.*

5. Our standard of review is limited to determining whether constitutional rights have been violated, an error of law has occurred, or necessary findings of fact are supported by substantial evidence. *Falcon Oil Co. v. Dep't. of Envtl. Resources*, 148 Pa.Cmwlth. 90, 609 A.2d 876, 878 (1992). The question of whether there are unique and compelling facts, which establish a non-negligent failure to timely appeal, is a legal conclusion to be drawn from the evidence and is reviewable on appeal. *Id.*

under the 45 day appeal period. The lateness of the appeal is not disputed.

In his October letter, Director Lewis told J.A., "If you believe your appeal should be considered even though it was not postmarked within the time required by law, you must request in writing that the Bureau of Hearings and Appeals ... review the indicated finding of the child abuse report. *Your letter must include an explanation for the late request* and a telephone number where BHA can contact you...." (Emphasis added.) In response to this letter, J.A. wrote to Director Lewis on November 13, 2003, and stated:

> I am sending this letter for appeal on the above mention [sic]. The first time that I have known that my name appearing [sic] on the Child Abuse Registry was in August of 2003 when I applied for a job and a Child Abuse background check was sent out and when I received it back that's when I found out. I *have never received any kind of investigation, letter, phone calls, visits or notice from the Commonwealth of Pennsylvania or Mr. Scott Fries of Child Line and Abuse Department that my name appearing [sic] on the Child Abuse Registry....*

(Emphasis added.) Thus, J.A.'s asserted basis for her *nunc pro tunc* appeal was a failure to receive the Notice mailed on December 27, 1995.

The Proposed Adjudication refers to a statement, in the December 15th letter from J.A.'s attorney, that J.A. was living in a homeless shelter at the time the Notice was mailed, and that it was not given to her by shelter staff. If true, this might be sufficient to permit a *nunc pro tunc* appeal. *See Bradley v. Pa. Bd. of Probation*

*and Parole,* 108 Pa.Cmwlth. 21, 529 A.2d 66, 67 (1987) (reasoning that negligent conduct of third person may be basis for *nunc pro tunc* relief). However, in her brief, J.A. specifically *denies* that she has ever lived in a homeless shelter. (Pet'r. Br. at 6.) Thus, any argument that shelter personnel were responsible for the non-delivery of her Notice is waived and we are left with nothing but the bare assertion that she did not receive the Notice.

Bare allegations that one has failed to receive a mailing are insufficient cause for allowing a *nunc pro tunc* appeal. *Bradley; Bd. of Pensions & Retirement of City of Philadelphia v. Jackson,* 126 Pa. Cmwlth. 551, 560 A.2d 310 (1989). The so-called "mailbox rule" creates a rebuttable presumption that the item mailed was received and mere denial of receipt is not sufficient to defeat this presumption. *Sheehan v. Workmen's Compensation Appeal Bd. (Supermarkets General),* 143 Pa. Cmwlth.624, 600 A.2d 633 (1991), *petition for allowance of appeal denied,* 530 Pa. 663, 609 A.2d 170 (1992).

Here, J.A. did not proffer any evidence that the Notice had been incorrectly mailed or that the conduct of the agency in mailing it involved fraud or an administrative breakdown. Further, none of her correspondence directed to Director Lewis alludes to her having lived in a homeless shelter. This case stands in sharp contrast to *H.D.,* where the appealing party, H.D., was able to show that he was not living at the residence to which notice had been addressed[6] at the time it was sent, and also demonstrated that the Department of Public Welfare had violated its "duty to make a reasonable effort to verify

---

6. Of note, H.D, did admit to receiving a notice, approximately six months after the original notice of the indicated report was mailed to his parents, but this notice informed him that the child abuse report, naming him as a perpetrator, had been destroyed based on Children Services' determination that the report was unfounded. *H.D., 751 A.2d at 1218.*

H.D.'s current address before mailing the notice of the indicated report." *Id.* at 1220. Here, J.A. never contended that the address to which the Notice was send was incorrect and, in fact, we note that the address to which the 1995 Notice was sent is the same address that she placed on the front of her pro se brief filed with this Court, as well as on the two letters she sent to the Bureau. We, thus, must conclude that the law does not support the grant of *nunc pro tunc* relief in this circumstance.

Therefore, we have no choice but to affirm the Secretary's order dismissing the appeal as untimely.

## ORDER

**NOW,** March 1, 2005, the order of the Secretary of the Department of Public Welfare in the above-captioned matter is hereby affirmed.