IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.K., Jr., | : | **SEALED CASE** |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Human Services, | : | No. 489 C.D. 2015 |
| Respondent | : | Submitted: September 25, 2015 |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: December 30, 2015


J.K., Jr. (J.K.), pro se, petitions this Court for review of the Department of Human Services' (DHS)[1] Bureau of Hearings and Appeals' (BHA) January 22, 2015 order dismissing J.K.'s request to expunge his indicated report[2] from the ChildLine[3] & Abuse Registry (ChildLine Registry). The sole issue for this Court's

---

[1] Effective November 24, 2014, Department of Public Welfare was officially renamed the Department of Human Services.

[2] An "[i]ndicated report" is

> a report of child abuse . . . if an investigation by [DPW] or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following: (i) [a]vailable medical evidence[;] (ii) [t]he child protective service investigation[; or,] (iii) [a]n admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303(a) (emphasis omitted); *see also* 55 Pa. Code § 3490.4. "Substantial evidence" is defined in the Child Protective Services Law (Law) as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a) (emphasis omitted); *see also* 55 Pa. Code § 3490.4.

[3] "ChildLine" is defined as "[a]n organizational unit of [DHS] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of the [Law] (relating to establishment of Statewide toll-free telephone number), refers the reports for

review is whether DHS erred by dismissing J.K.'s 2014 expungement appeal.[4] After review, we affirm.

On October 23, 2002, DHS mailed J.K. a notice advising him that, following an investigation of a report made to the Lackawanna County Office of Youth & Family Services (OYFS),[5] he was listed on the ChildLine Registry as a perpetrator of child abuse (Notice). The Notice informed J.K. that he could request to have the indicated report amended or destroyed if he believed that it was inaccurate or not being legally maintained. *See* Reproduced Record (R.R.) at 4a. The Notice further read: "ALL REQUESTS MUST BE MADE IN WRITING WITHIN 45 DAYS FROM THE DATE OF THIS NOTICE."[6] R.R. at 4a. Because J.K.'s appeal was postmarked December 31, 2002, the appeal was dismissed as untimely filed. J.K. requested a hearing and, on April 25, 2003, BHA upheld the dismissal since J.K.'s appeal was untimely and he failed to satisfy the *nunc pro tunc* appeal requirements. J.K. sought reconsideration by the Secretary of Human Services (Secretary), which was granted on May 13, 2003. By Final Order issued April 7, 2004, the Secretary upheld BHA's dismissal. J.K. did not appeal from the Final Order, and his name remained on the ChildLine Registry.

During the summer of 2014, when J.K. and his fiancé, with whom he resided, were attempting to gain emergency custody of her grandchildren, J.K.'s background check revealed that his name was on the ChildLine Registry. By September 5, 2014 letter, J.K. requested information regarding the 2002 abuse

---

investigation and maintains the reports in the appropriate file. . . ." 55 Pa. Code § 3490.4 (emphasis omitted).

[4] J.K. stated the issue as follows: "Was the oversight of using *nunc pro tunc* in its correct purpose, a direct hindrance of having false allegations of child abuse expunged back in 2002? Ultimately, the government unit decided to dismiss the appeal with res judicata claiming untimeliness." J.K. Br. at 5 (italics added).

[5] OYFS was formerly known as Lackawanna County Children & Youth Services.

[6] An amendment to Section 6341(a)(2) of the Child Protective Services Law, 23 Pa.C.S. § 6341(a)(2), effective December 31, 2014 extended the period to 90 days.

allegations. On October 9, 2014, J.K. faxed a letter to BHA declaring his innocence of the 2002 charges. BHA deemed J.K.'s letter a request to have his name expunged from the ChildLine Registry.[7] A hearing was held on December 17, 2014 before an administrative law judge (ALJ), at which OYFS moved for dismissal because the appeal: (1) was untimely, (2) did not satisfy the *nunc pro tunc* requirements, and (3) was heard and fully adjudicated in 2003.[8] The ALJ recommended that J.K.'s appeal be "Dismissed for Res Judicata." R.R. at 24a. By January 22, 2015 order, BHA adopted the ALJ's recommendation. J.K. sought reconsideration by the Secretary, which he denied by March 10, 2015 order. J.K. appealed to this Court.[9]

J.K. argues that his appeal delay was caused by OYFS using his incorrect address on its investigative report and the Notice.[10] However, the record does not reflect that J.K. raised this issue to DHS. Except for a few limited

---

[7] Effective December 31, 2014, Section 6341(a)(1) of the Law provides in pertinent part that, "[a]t any time, the [S]ecretary may amend or expunge any record in the [ChildLine Registry] . . . upon good cause shown and notice to the appropriate subjects of the report." 23 Pa.C.S. § 6341(a)(1). Good cause could include newly-discovered evidence of an indicated report's inaccuracy or inconsistency and/or a determination that the perpetrator named on an indicated report no longer represents a risk and no significant public purpose would be served by continuing to maintain his or her name on the ChildLine Registry. *See* 23 Pa.C.S. § 6341(a)(1)(i)-(ii).

[8] OYFS counsel stated at the hearing that since OYFS' file had been expunged and investigating caseworkers were no longer on staff, in order to properly present this case, it had to reconstruct it from another case-related court file and, thus, it was prejudiced by J.K.'s extreme delay. *See* R.R. at 48a-51a, 62a-63a.

OYFS representative Rachel Green testified that OYFS records are expunged when the victim reaches 23 years of age. At that same time, the victim's name and the allegations are removed from the ChildLine Registry. However, the perpetrator's name remains on the ChildLine Registry for life, unless it is expunged on appeal. *See* R.R. at 76a-78a.

[9] "Our 'scope of review in expunction proceedings is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence.'" *K.R. v. Dep't of Pub. Welfare*, 950 A.2d 1069, 1073 n.6 (Pa. Cmwlth. 2008) (quoting *E.D. v. Dep't of Pub. Welfare*, 719 A.2d 384, 387 (Pa. Cmwlth. 1998)).

[10] J.K. avers that if OYFS had correctly addressed the documents, "this issue could've been resolved back in 2002." J.K. Br. at 11. J.K. does not specify in what manner the address OYFS used in 2002 was incorrect.

circumstances not relevant here, Pennsylvania Rule of Appellate Procedure 1551(a) states in pertinent part: "No question shall be heard or considered by the court which was not raised before the government unit . . . ." Pa.R.A.P. 1551(a). "The reasoning behind this rule is to provide the agency the opportunity to correct its own error, as well as to give us the benefit of its expertise and reasons for its actions." *Ardolino v. Pa. Sec. Comm'n*, 602 A.2d 438, 442 (Pa. Cmwlth. 1992). Because J.K. failed to raise this issue before DHS in either his 2002 or 2014 appeals, he waived it. Thus, this Court is precluded from addressing it.

J.K. also contends that his 2002 appeal was untimely because at that time he permitted his ex-wife to handle his paperwork. However, res judicata precludes this Court from reviewing that issue. "[T]echnical res judicata and collateral estoppel are both encompassed within the parent doctrine of res judicata[.]" *Weney v. Workers' Comp. Appeal Bd. (Mac Sprinkler Sys., Inc.)*, 960 A.2d 949, 954 (Pa. Cmwlth. 2008).

> Under the doctrine of technical res judicata, often referred to as claim preclusion, 'when a final judgment on the merits exists, a future suit between the parties on the same cause of action is precluded.' [*Henion v. Workers' Comp. Appeal Bd. (Firpo & Sons, Inc.)*, 776 A.2d 362, 365 (Pa. Cmwlth. 2001)]. In order for technical res judicata to apply, there must be: '(1) identity of the thing sued upon or for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued.' *Id.* at 366. Technical res judicata may be applied to bar 'claims that were actually litigated as well as those matters that *should have been* litigated.' *Id.* (emphasis added). 'Generally, causes of action are identical when the subject matter and the ultimate issues are the same in both the old and the new proceedings.' *Id.*
>
> The doctrine of collateral estoppel, often referred to as issue preclusion, 'is designed to prevent relitigation of an issue in a later action, despite the fact that the later action is based on a cause of action different from the one previously

4

litigated.' *Pucci v. Workers' Comp*[.] *Appeal B*[*d.*] *(Woodville State Hosp.)*, 707 A.2d 646, 647-48 (Pa. Cmwlth. 1998). Collateral estoppel applies where:

> (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the judgment.

*Id.* at 648.

*Weney*, 960 A.2d at 954.

At the 2014 ALJ hearing, OYFS offered its documents related to the 2002 ChildLine Registry expungement without objection from J.K.; thus, they were admitted into evidence. When asked by the ALJ if he had seen BHA's April 25, 2003 decision dismissing his 2002 appeal as untimely, J.K. responded that he "never did paperwork for the house" because his "ex-wife . . . did all of that." R.R. at 57a. When asked if he signed the request to reconsider that decision, J.K. explained: "This is what -- I understand that this part is my fault, because I let her do all of this. She -- she wound up -- she had a brain aneurysm, and she lost part of her memory, and she insisted she had to do all of this."[11] R.R. at 60a. He further related: "So, she's the

---

[11] Notably, in J.K.'s 2015 request for reconsideration of BHA's decision, he admitted: "Yes **I did sign a document. I am not disputing this.** However, I thought that it had been handled and resolved." R.R. at 27a (emphasis added). J.K.'s admission is supported by the fact that his signatures on both his 2003 and 2015 reconsideration requests appear nearly identical. *See* R.R. at 26a; *see also* Supplemental Reproduced Record at 101. Moreover, J.K. admits in his brief filed with this Court that he, rather than his ex-wife, handled the 2002 appeal:

> On October[] 23, 2002, [OYFS] released a report indicating me of child abuse. Once I had this report, **I filed an appeal** postmarked December[] 31, 2002. I was denied the appeal, stating I was 24 days past the 45 days allotted amount of time to file. **I continued to appeal** this matter, until I had heard no more, and thought that it was resolved.

J.K. Br. at 9 (emphasis added); *see also* J.K. Br. at 6.

5

one that mostly did the paperwork and everything for me. . . . Her doctors said there was brain damage after the operation, and I wanted to believe in her." R.R. at 67a. He also offered that he had no hesitation in submitting his name for the 2014 background check because he "had no idea that this was -- . . . I have never been in trouble in my life. And [Detective] Chris Kolcharno told me back then that there's nothing," because the victim "told too many stories." R.R. at 72a. Other than the explanation regarding his ex-wife's control over his paperwork, J.K. did not offer any information or documentation to distinguish the circumstances of his 2002 appeal from his 2014 appeal. J.K.'s 2014 appeal was just a later version of his untimely 2002 appeal.

> The ALJ held in his January 22, 2015 recommendation:

> In this case, [J.K.] filed an untimely appeal of [his] ChildLine Final Notice on December 31, 2002. BHA conducted a timeliness hearing to determine if the appeal should be allowed to proceed *nunc pro tunc*. The issue of timeliness was clearly identified at the hearing and was the only issue discussed. On April 25, 2003, BHA issued a Final Administration Action Order dismissing the appeal as untimely filed. Again, timeliness was the only issue addressed by BHA. In the prior hearing, timeliness was the only issue identified at the hearing and was the only issue decided in the Final Administration Action Order. In the current appeal, timeliness is again the only issue on appeal over the exact same issue as previously decided by [BHA]. Therefore, res judicata applies because there was a prior-adjudication on the merits of the previous matter, which was timeliness.

> . . . . [J.K.] argued that the current issue is different than the issue decided by BHA on April 25, 2003; therefore, res judicata should not apply. However, [J.K.] filed an untimely appeal on December 31, 2002 and the subsequent appeal, filed by [J.K.] on October 9, 2014, remains untimely. As such, the issue of timeliness remains unchanged. BHA issued a Final Administration Action Order and decided the issue of timeliness on April 25, 2003.

6

> Since the issues are in fact the same, collateral estoppel applies and the appeal should be dismissed.
>
> Accordingly, [J.K.'s] appeal should be dismissed due to the application of [r]es [j]udicata.

R.R. at 33a-34a (italics added). BHA adopted the ALJ's recommendation.

The record before us makes clear that J.K.'s 2002 and 2014 appeals from the October 23, 2002 Notice seek to have his name expunged from the ChildLine Registry, and both BHA reviews addressed whether J.K.'s appeals were timely, or could be accepted *nunc pro tunc*.[12] Because J.K.'s 2014 appeal is identical to his

---

[12] Even if J.K.'s claim was not precluded, we would be compelled to affirm BHA's dismissal on the grounds that he failed to meet the requirements for a *nunc pro tunc* appeal. "It is well established that the failure to timely appeal an administrative agency's action is a jurisdictional defect. The time for taking an appeal therefore cannot be extended as a matter of grace or mere indulgence." *J.C. v. Dep't of Pub. Welfare,* 720 A.2d 193, 197 (Pa. Cmwlth. 1998) (citation omitted).

> A perpetrator must request that an indicated report of child abuse be amended or expunged within forty-five (45) days of being notified of the indicated report. 23 Pa.C.S. § 6341(a)(2). An exception allows perpetrators to proceed *nunc pro tunc* where he or she can demonstrate that **the delay in requesting an appeal was caused by extraordinary circumstances involving fraud, a breakdown in the administrative processes**, **or non-negligent circumstances related to the petitioner, his counsel or a third party**.

*Beaver Cnty. Children & Youth Servs. v. Dep't of Pub. Welfare*, 68 A.3d 44, 48 (Pa. Cmwlth. 2013) (emphasis added).

> A party seeking permission to file a *nunc pro tunc* appeal . . . needs to establish that: (1) [he] filed the appeal shortly after learning of and having an opportunity to address the untimeliness; (2) the elapsed time is one of very short duration; and (3) the respondent will not suffer prejudice due to the delay.

*Smith v. Pa. Bd. of Prob. & Parole*, 81 A.3d 1091, 1094 n.4 (Pa. Cmwlth. 2013) (quoting *J.A. v. Dep't of Pub. Welfare,* 873 A.2d 782, 785 n.4 (Pa. Cmwlth. 2005)). "The question of whether there are unique and compelling facts, which establish a non-negligent failure to timely appeal, is a legal conclusion to be drawn from the evidence and is reviewable on appeal." *J.A.*, 873 A.2d at 785 n.5.

According to BHA's April 25, 2003 adjudication, J.K. provided no reason for his untimely appeal. Although he provided testimony about why his 2014 appeal was so late, that testimony did not establish that he did not timely receive the Notice or know of the 2002 appeal deadline, or that

7

2002 appeal, which was fully adjudicated with J.K.'s participation, BHA properly dismissed his 2014 appeal as precluded by res judicata. Accordingly, BHA's order is affirmed.

_____
ANNE E. COVEY, Judge

---

his delay was caused by any "extraordinary circumstances involving fraud, a breakdown in the administrative processes, or non-negligent circumstances." *Beaver Cnty. Children & Youth Servs.*, 68 A.3d at 48. Thus, J.K. did not meet the requirements to have his appeal heard *nunc pro tunc* in either 2002 or 2014.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.K., Jr., | : | **SEALED CASE** |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Human Services, | : | No. 489 C.D. 2015 |
| Respondent | : | |

O R D E R

AND NOW, this 30th day of December, 2015, the Department of Human Services' Bureau of Hearings and Appeals' January 22, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge