# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K.B. In Re: M.B.,            :    **SEALED CASE**
         Petitioner     :
                         :
         v.            :
                         :
Department of Human Services,   :    No. 1070 C.D. 2016
         Respondent   :    Submitted: January 27, 2017


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                         FILED: May 1, 2017


K.B. petitions this Court for review of the Department of Human Services (DHS) Secretary's (Secretary) June 7, 2016 Final Order upholding the Bureau of Hearings and Appeals' (BHA) denial of K.B.'s appeal as untimely. The sole issue for this Court's review is whether the BHA properly dismissed K.B.'s appeal. After review, we affirm.

On April 20, 2015, DHS mailed K.B. a notice advising him that he was listed on the ChildLine[1] & Abuse Registry (ChildLine) as a perpetrator in an indicated report[2] of child abuse (Notice). The Notice stated:

---

[1] ChildLine is defined as "[a]n organizational unit of [DHS] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of the [Law] (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. . . ." 55 Pa. Code § 3490.4.

[2] Section 6303(a) of the Child Protective Services Law (Law) states that an "[i]ndicated report" is

> a report of child abuse . . . if an investigation by [DHS] or county
> agency determines that substantial evidence of the alleged abuse by a

A copy of the report of abuse is enclosed. Please read the report carefully.

If you disagree with the decision that you committed abuse, you have the right to a review of that decision. **You must request a review within 90 days of the mailing date listed at the top of this notice.**[3]

Reproduced Record (R.R.) at 11a (emphasis in original). The review request form that accompanied the Notice also clearly stated: "YOU MUST SEND THIS FORM SO THAT IT IS POSTMARKED WITHIN 90 DAYS OF THE MAILING DATE ON THE ENCLOSED NOTICE. IF THE FORM IS NOT POSTMARKED WITHIN 90 DAYS, YOU WILL LOSE THE RIGHT TO A REVIEW OR HEARING." R.R. at 13a.

On July 30, 2015, K.B. submitted his review request. *See* R.R. at 13a; *see also* R.R. at 15a. In addition, K.B. requested a deferral, stating:

On June 29, 2015, the Court found that the minor child in the above[-]referenced matter was Not Dependent.

The matter has not been heard by the Court of Common Pleas of Cambria County [(trial court)]. Until such time, there is no abuse, we ask this organization to defer a review or hearing on this matter until this case has been disposed of at the [trial court].

R.R. at 14a.

By September 23, 2015 letter, DHS notified K.B., in relevant part:

**We cannot review your appeal because the request was not received within 90 days of the** [**Notice**] . . . **dated 4/20/2015**. As explained in that letter, the Pennsylvania

---

perpetrator exists based on any of the following: (i) [a]vailable medical evidence[;] (ii) [t]he child protective service investigation[; or,] (iii) [a]n admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303(a) (emphasis omitted); *see also* 55 Pa. Code § 3490.4.

[3] A timely response to the Notice was due on or before July 20, 2015 (since the 90-day deadline expired on Sunday, July 19, 2015, the actual due date would have been Monday, July 20, 2015).

2

Child Protective Services Law [(Law)[4]] requires that appeals of child abuse reports be made within 90 days of the date you were informed in writing of the status of the report. Therefore, the abuse report will remain on file as submitted by the investigating agency.

If you believe your appeal should be considered even though it was not received within the time required by law, you must request in writing that the [BHA] . . . review the indicated finding of the child abuse report. . . . This written request must be received within 90 days of the date of this letter[.]

R.R. at 16a (emphasis added).

By December 17, 2015 letter, K.B.'s counsel informed Cambria County Children and Youth Services (CYS) that "the criminal charges against [K.B.] . . . have been withdrawn[,]" and "request[ed] that [K.B.'s] name be removed from [ChildLine]." R.R. at 17a. On January 27, 2016, BHA was notified that a hearing was requested "to determine if [K.B.'s] late request for an appeal should be accepted." R.R. at 6a. On February 25, 2016, a telephone hearing was held before an administrative law judge (ALJ).

At the February 25, 2016 hearing, K.B.'s counsel argued that since the trial court declared that "there was no dependency on behalf of [K.B.,]" R.R. at 47a, and "[t]he [trial court] found there was no [criminal] case, and dismissed it," R.R. at 46a, "there is no abuse . . . [a]nd the matter should be disposed of ab initio." R.R. at 46a; *see also* R.R. at 45a-49a. K.B.'s counsel acknowledged that K.B. received the April 20, 2015 Notice, but did not file an appeal within 90 days,

[b]ecause it was irrelevant. It didn't matter. There was no case against [K.B.] I usually would say this is similar to a [s]upersedeas. Any time I've seen these things before, you can write a letter to the [BHA] and say, delay the matter until we have a finding. All right? And they would do that,

---

[4] 23 Pa.C.S. §§ 6301-6386.

3

too. They wouldn't make a decision on this until there was a finding by the court. . . . This is the same.

R.R. at 49a. The ALJ stated: "You're correct. But an appeal has to be filed before we can . . . delay an appeal, but there wasn't an appeal filed." R.R. at 50a.

By March 2, 2016 adjudication, the ALJ made the following findings of fact:

1. On April 20, 2015, ChildLine mailed [K.B.] a letter giving notice that [K.B.] is listed on the statewide central register of child abuse as a perpetrator in an indicated report of child abuse.

2. The April 20, 2015 letter notified [K.B.] of the right to request the indicated report be amended or destroyed and instructed [K.B.] a request must be made within 90 days of the date of the [N]otice.

3. [K.B.] received the April 20, 2015 [N]otice.

4. On July 30, 2015, [K.B.], through counsel, filed an appeal of the April 20, 2015 [N]otice.

5. [K.B.'s] July 30, 2015 appeal was postmarked 101 days after the mailing of the April 20, 2015 [N]otice.

6. At the hearing, no evidence was presented to show the delay in filing of the late appeal was caused by fraud or its equivalent on the part of administrative authorities, a breakdown in the administrative process, or the non-negligent conduct of [K.B.] or someone acting on [K.B.'s] behalf or the negligent conduct of a third party.

R.R. at 27a. The ALJ reasoned:

In this case, counsel for [K.B.] stated he did not file an appeal within the 90[-]day limit because it was irrelevant and it did not matter as there was a related dependency matter which would have resulted in the above-captioned matter being stayed. However, [Section 6341(d) of the Law,] 23 Pa. C.S. § 6341(d)[,] states that 'any administrative appeal' will be automatically stayed upon notice to [DHS] of a pending dependency proceeding. Thus, an appeal must first be filed before a stay of the

4

proceeding can be issued, and therefore, it is very relevant and it does matter that a timely appeal was not filed in this case. Yet, [K.B.'s] counsel failed to take due diligence to preserve [K.B.'s] appeal rights by filing a timely appeal in this case. As a result, I do not find [K.B.] has shown sufficient grounds to allow the appeal to proceed *nunc pro tunc* in this case.

R.R. at 28a (italic emphasis added). Accordingly, the ALJ concluded that "[K.B.'s] appeal was not timely filed in accordance with [Section 6341 of the Law]. Further, [K.B.] has not shown sufficient reasons to allow the appeal to proceed *nunc pro tunc*, and the appeal should be dismissed." R.R. at 28a (italic emphasis added). By March 3, 2016 order, the BHA adopted the ALJ's adjudication and dismissed K.B.'s appeal. *See* R.R. at 24a.

K.B. filed a request for reconsideration of the BHA's order with the Secretary, arguing that the BHA overlooked that his criminal case had been dismissed. *See* R.R. at 30a. On April 11, 2016, the Secretary granted K.B.'s reconsideration request. *See* R.R. at 31a-32a. On April 11, 2016, CYS responded that "the only excuse given for the delay was that [K.B. was] waiting to see what would happen to the criminal charges filed against [K.B.]" R.R. at 34a. By Final Order issued June 7, 2016, the Secretary upheld the BHA's March 3, 2016 adjudication dismissing K.B.'s appeal as untimely. *See* R.R. at 36a. K.B. appealed to this Court.[5]

Initially, Section 6341(a)(2) of the Law requires that a perpetrator must request that an indicated report of child abuse be amended or expunged within 90 days of being notified of the indicated report. 23 Pa.C.S. § 6341(a)(2). "It is well

---

[5] "Our 'scope of review in expunction proceedings is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence.'" *K.R. v. Dep't of Pub. Welfare,* 950 A.2d 1069, 1073 n.6 (Pa. Cmwlth. 2008) (quoting *E.D. v. Dep't of Pub. Welfare*, 719 A.2d 384, 387 (Pa. Cmwlth. 1998)).

5

established that the failure to timely appeal an administrative agency's action is a jurisdictional defect. The time for taking an appeal therefore cannot be extended as a matter of grace or mere indulgence." *J.C. v. Dep't of Pub. Welfare,* 720 A.2d 193, 197 (Pa. Cmwlth. 1998) (citation omitted).

Here, K.B. admits that he did not timely appeal from the April 20, 2015 Notice, but claims that this requirement to do so was stayed pending the outcome of the dependency proceeding and the related criminal charges. *See* K.B. Br. at 5, 6. We disagree.

Section 6341(d) of the Law states:

> **Any administrative <u>appeal</u> proceeding** pursuant to [Section 6341(b) of the Law, 23 Pa.C.S. § 6341(b) (relating to review of grant request),] **shall be automatically stayed upon notice to the [D]epartment by either of the parties when there is a pending criminal proceeding or a dependency** or delinquency **proceeding** pursuant to 42 Pa.C.S. Ch. 63 (relating to juvenile matters), including any appeal thereof, **involving the same factual circumstances as the administrative appeal**.

23 Pa.C.S. § 6341(d) (bold and underline emphasis added); *see also* 55 Pa. Code § 3490.106a. The express wording of the statute clearly establishes that the timely filing of an appeal is an essential prerequisite to the automatic stay. *In re Gorham*, 414 A.2d 712, 713 (Pa. Super. 1979). Where there has been a "failure to comply with the requirements of a statute or a general rule in perfecting an appeal," there is no appeal proceeding over which the reviewing body has jurisdiction. *City of Phila. v. Silverman*, 497 A.2d 689, 692 (Pa. Cmwlth. 1985); *see also J.C.* By extension, where there is no appeal proceeding, there can be no stay under Section 6341(d) of the Law.

Arguably, although K.B. in his July 30, 2015 letter sought to have the BHA's review of his ChildLine listing stayed pending the results of the trial court's

disposition of "the matter,"[6] K.B. did not request a review of the April 20, 2015 Notice. R.R. at 14a. Even assuming that K.B.'s July 30, 2015 letter was his appeal from the Notice, since it was filed 10 days past the 90-day deadline, it was untimely and, thus, there was no appeal proceeding to stay pursuant to Section 6341(d) of the Law. K.B. supplied no case law to support his argument that the stay afforded by Section 6341(d) of the Law was automatic in the absence of an appeal, and we have found none.

K.B. contends that his appeal should nevertheless be allowed *nunc pro tunc*. This Court has held:

> An exception allows perpetrators to proceed *nunc pro tunc* where he or she can demonstrate that **the delay in requesting an appeal was caused by extraordinary circumstances involving fraud, a breakdown in the administrative processes**, <u>or</u> **non-negligent circumstances related to the petitioner, his counsel or a third party**.

*Beaver Cnty. Children & Youth Servs. v. Dep't of Pub. Welfare*, 68 A.3d 44, 48 (Pa. Cmwlth. 2013) (bold and underline emphasis added). Moreover,

> [a] party seeking permission to file a *nunc pro tunc* appeal . . . needs to establish that: (1) [he] filed the appeal shortly after learning of and having an opportunity to address the untimeliness; (2) the elapsed time is one of very short duration; and (3) the respondent will not suffer prejudice due to the delay.

*Smith v. Pa. Bd. of Prob. & Parole*, 81 A.3d 1091, 1094 n.4 (Pa. Cmwlth. 2013) (quoting *J.A. v. Dep't of Pub. Welfare,* 873 A.2d 782, 785 n.4 (Pa. Cmwlth. 2005)). "However, it must first be found that the failure to file untimely was non-negligent[.]" *In Re Appeal of Tenet HealthSystems Bucks Cnty., LLC,* 880 A.2d 721,

---

[6] It is unclear based on the face of the July 30, 2015 letter what K.B. meant by "the matter." R.R. at 14a. However, since the letter also stated that the dependency proceeding was concluded, we can only assume that "the matter" referred to K.B.'s pending criminal charges. R.R. at 14a.

728 n.15 (Pa. Cmwlth. 2005). Moreover, "**mere neglect** or administrative oversight **of counsel cannot justify the allowance of an appeal** *nunc pro tunc*[.]" *Lawrence Cnty. v. Pa. Labor Relations Bd.,* 469 A.2d 1145, 1149 (Pa. Cmwlth. 1983) (italics and bold emphasis added).

In this case, K.B. was aware of the appeal deadline upon his receipt of the April 20, 2015 Notice, yet waited 100 days to act. At no point did K.B. or his counsel claim that K.B. was unaware of the appeal deadline, or that K.B.'s delay was caused by any "extraordinary circumstances involving fraud, a breakdown in the administrative processes, or non-negligent circumstances." *Beaver Cnty. Children & Youth Servs.*, 68 A.3d at 48. Rather, K.B. chose not to appeal, but to proceed under the presumption that the disposition of the dependency and criminal cases would establish that no abuse occurred.

At the February 25, 2016 hearing, K.B.'s counsel argued that since the trial court declared that "there was no dependency on behalf of [K.B. [sic],]" R.R. at 47a, "there is no abuse . . . [a]nd the matter should be disposed of ab initio." R.R. at 46a; *see also* R.R. at 45a-49a. However, it is undisputed that CYS instituted dependency proceedings on or about May 6, 2015 by filing a petition. *See* R.R. at 57a-61a. Therein, CYS represented that court action was necessary because M.B. was "without proper care or control." R.R. at 57a; *see also* R.R. at 59a. The dependency petition further reflected that M.B. had been placed in her maternal grandparents' care in the meantime. *See* R.R. at 57a. By May 11, 2015 notice, the trial court scheduled M.B.'s dependency hearing for June 1, 2015. *See* R.R. at 62a. On May 15, 2015, CYS issued recommendations to the trial court that M.B. remain in her maternal grandparents' custody. On June 29, 2015, the trial court issued the following order:

> [A]fter a hearing on June 1, 2015, and after consideration of
> the petition presented [by CYS,] the Court finds that clear

8

and convincing evidence does not exist to substantiate the allegations set forth in the petition. Furthermore[,] it is ORDERED that [M.B.] is found not to be a Dependent Child pursuant to the [Juvenile Act,] and that the petition for dependency is dismissed.

Legal and Physical Custody is to remain with the maternal grandparents . . . .

R.R. at 65a; *see also* R.R. at 53a. M.B.'s dependency matter was concluded nearly three weeks **before** K.B.'s appeal filing deadline expired.

Moreover, K.B.'s counsel erroneously represented at the hearing and in its brief to this Court, that because there was not clear and convincing evidence of M.B.'s dependency, "there was no finding of abuse." R.R. at 46a; *see also* K.B. Br. at 9. However, our Supreme Court has explained:

A court is empowered by [Section 6341(a) and (c) of the Juvenile Act,] 42 Pa.C.S. § 6341(a)[,](c)[,] to make a finding that **a child is dependent if the child meets the statutory definition by clear and convincing evidence**. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

The definition of **a dependent child** contained in [S]ection 6302 [of the Juvenile Act] clearly states that a child **must lack a parent, guardian or other legal custodian who can provide appropriate care to the child**.

*In re M.L.*, 757 A.2d 849, 850-51 (Pa. 2000) (emphasis added).

In M.B.'s dependency proceeding, the trial court held that "clear and convincing evidence does not exist to substantiate the allegations set forth in the petition." R.R. at 65a. The allegations contained in the petition were that M.B. was "without proper care or control." R.R. at 57a; *see also* R.R. at 59a. However, because

9

M.B. was in her grandparents' safe custody at the time of the dependency hearing, she did not "lack a . . . guardian or other legal custodian who [could] provide [her] appropriate care" and, thus, there was not clear and convincing evidence that M.B. was a dependent child requiring the trial court's immediate protection under the Juvenile Act.[7] *M.L.*, 757 A.2d at 851.

The law is clear that "[t]he dependency laws focus on the needs and welfare of neglected and abused children. Dependency court decisions are based on the children's best interests. The purpose underlying the proceedings is not punishment of the parents or restriction of their liberty." *In re J.Y.*, 754 A.2d 5, 10-11 (Pa. Super. 2000). Accordingly, the dependency proceeding in this case related to M.B.'s safe placement, and did not in any way adjudicate whether K.B.'s alleged abuse of M.B. was substantiated.

K.B.'s counsel also argued at the February 25, 2016 hearing that since "[t]he [trial court] found there was no [criminal] case, and dismissed it," R.R. at 46a, "there is no abuse . . . [a]nd the matter should be disposed of ab initio." R.R. at 46a; *see also* R.R. at 45a-49a. We acknowledge, based upon the documents K.B.'s counsel supplied to CYS with his December 17, 2015 letter, that a criminal complaint was filed against K.B. on April 1, 2015 containing twelve counts related to his alleged sexual assault of a minor. *See* R.R. at 17a-23a; *see also* R.R. at 9a. Those charges were not dismissed by the trial court, but rather the district attorney withdrew them on December 17, 2015. *See* R.R. at 17a, 21a. Although the record does not reflect why the charges were withdrawn, K.B.'s counsel stated that it was because M.B. failed to appear at K.B.'s hearing. *See* R.R. at 47a-48a. If that is the case, there

---

[7] CYS' counsel's statements at the February 25, 2016 hearing confirmed that the trial court declared M.B. not dependent because M.B. could continue in the care and custody of her grandparents. *See* R.R. at 51a, 53a.

is no adjudication from which K.B. could conclude that "there [wa]s no abuse" to support maintaining his indicated report on ChildLine. R.R. at 46a.

The Commonwealth was required to prove every element of the crimes charged against K.B. "beyond a reasonable doubt." *Commonwealth v. Smith*, 17 A.3d 873, 908 (Pa. 2011). "[T]he 'beyond a reasonable doubt' standard is the highest standard of proof and applies to criminal proceedings that impact an individual's liberty interest, an interest worthy of the highest protection." *In re S.H.*, 96 A.3d 448, 455 n.7 (Pa. Cmwlth. 2014). Conversely, "[CYS] has the burden of establishing by substantial evidence that an indicated report of child abuse is accurate. If CYS fails to sustain that burden, a request for expungement will be granted." *Bucks Cnty. Children & Youth Soc. Servs. Agency v. Dep't of Pub. Welfare,* 808 A.2d 990, 993 (Pa. Cmwlth. 2002). "The [substantial evidence/]'preponderance of the evidence' standard[8] is the lowest of the . . . standards [of proof,] and means that the fact finder must be satisfied that the evidence shows that a fact is probably true, *i.e.,* more likely true than not." *S.H.*, 96 A.3d at 455 n.7; *see also* 23 Pa.C.S. § 6303(a); 55 Pa. Code § 3490.4.

The consistent testimony of a child abuse victim can support the findings of fact upon which a determination that an indicated report was accurate can be made. *D.T. v. Dep't of Pub. Welfare*, 873 A.2d 850 (Pa. Cmwlth. 2005); *K.J. v. Dep't of Pub. Welfare*, 767 A.2d 609 (Pa. Cmwlth. 2001). An indicated child abuse report can also be based exclusively on a child protective service investigation. *K.J.*; *see also* 23 Pa.C.S. § 6303(a) (definition of indicated report at (ii)). Accordingly, successful

---

8 This Court has declared that "'substantial evidence" in child abuse expungement cases is synonymous with the 'preponderance of the evidence' standard." *S.T. v. Dep't of Pub. Welfare, Lackawanna Cnty. Office, Children, Youth & Family Servs.*, 681 A.2d 853, 857 n.4 (Pa. Cmwlth. 1996).

prosecution of related criminal charges is not required to substantiate an indicated report on ChildLine. The withdrawal of the criminal charges against K.B. was not an adjudication that "there [wa]s no abuse," such that his indicated report would be expunged from ChildLine. R.R. at 46a.

Based on the foregoing, there was no reasonable basis for K.B. or his counsel to have concluded that his appeal "was irrelevant" and "didn't matter" since "[t]here was no case against him." R.R. at 49a. There being no evidence that K.B.'s appeal delay was caused by any "extraordinary circumstances involving fraud, a breakdown in the administrative processes, or non-negligent circumstances," *Beaver Cnty. Children & Youth Servs.*, 68 A.3d at 48, there is no basis upon which this Court may permit K.B.'s appeal *nunc pro tunc*.

Under the circumstances of this case, we have no choice but to hold that the Secretary properly upheld the BHA's order dismissing K.B.'s appeal as untimely and without sufficient basis to allow a *nunc pro tunc* appeal. For all of the above reasons, the Secretary's Final Order is affirmed

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K.B. In Re: M.B., : **SEALED CASE**
                  Petitioner :
                          :
               v. :
                          :
Department of Human Services, : No. 1070 C.D. 2016
                Respondent :

O R D E R

AND NOW, this 1st day of May, 2017, the Department of Human Services' June 7, 2016 Final Order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

K.B. In Re:  M.B.,                          :    **SEALED CASE**
             Petitioner            :
                                      :
             v.                    :
                                        :
Department of Human Services,                :    No. 1070 C.D. 2016
             Respondent           :    Submitted:  January 27, 2017

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE                      FILED:  May 1, 2017


As I believe the equitable principles underlying the concept of *nunc pro tunc* relief are present here, I cannot join the majority, and must therefore dissent.


_____
JOSEPH M. COSGROVE, Judge