# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| V.S., | : | **SEALED CASE** |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Public Welfare, | : | No. 1186 C.D. 2014 |
| Respondent | : | Submitted: December 26, 2014 |


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                                              FILED: December 30, 2015


V.S. petitions this Court for review of the Department of Public Welfare's (DPW)[1] July 1, 2014 Final Order upholding the Bureau of Hearings and Appeals' (BHA) denial of V.S.' request to expunge her indicated report[2] from the ChildLine[3] & Abuse Registry (ChildLine). The issues for review are: (1) whether

---

[1] Effective November 24, 2014, DPW was officially renamed the Department of Human Services. However, because this appeal was filed before the official name change, we will refer to Respondent as DPW herein.

[2] Section 6303(a) of the Child Protective Services Law (Law) states that an "[i]ndicated report" is

> a report of child abuse . . . if an investigation by [DPW] or county agency determines that substantial evidence of the alleged abuse by a perpetrator exists based on any of the following: (i) [a]vailable medical evidence[;] (ii) [t]he child protective service investigation[; or,] (iii) [a]n admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303(a) (emphasis omitted); *see also* 55 Pa. Code § 3490.4. Substantial evidence is defined in the Law as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a); *see also* 55 Pa. Code § 3490.4.

[3] ChildLine is defined as "[a]n organizational unit of [DPW] which operates a Statewide toll-free system for receiving reports of suspected child abuse established under [S]ection 6332 of

DPW erred by denying V.S.' appeal *nunc pro tunc*; (2) whether DPW violated V.S.' constitutional right to due process by failing to have a procedure in place which would afford her counsel or a guardian ad litem; and, (3) whether DPW erred by failing to toll the appeal period until V.S. turned 18 years of age.

Seventeen-year-old V.S. gave birth to twins on January 6, 2011.[4] On or about February 3, 2011, infant A.M., one of the twins, was treated for medical problems potentially caused by physical abuse.[5] Berks County Children and Youth Services (BCCYS) conducted an investigation and, based on its findings, filed an indicated report of child abuse against V.S.

On April 11, 2011, DPW mailed V.S. a notice advising her that she was listed on ChildLine as a perpetrator of child abuse. The Notice stated:

> A copy of the report of abuse is enclosed. Please read the report carefully.
>
> If you disagree with the decision that you committed child abuse . . . , you have the right to a review of that decision. **You must respond within 45 days of the mailing date listed at the top of this notice.**
>
> To ask for this review, you can use the enclosed form and check off the first box on the form. After the review, you will get another letter telling you the decision. If you lose at this level, the letter will tell you how to ask for a hearing. If you follow the instructions in the letter, you have the right to a hearing.
>
> OR
>
> You can skip the review described above and ask the [BHA] for a hearing now. To ask for a hearing, you can use

---

the [Law] (relating to establishment of Statewide toll-free telephone number), refers the reports for investigation and maintains the reports in the appropriate file. . . ." 55 Pa. Code § 3490.4.

[4] According to V.S.' brief and the record, she was born on August 25, 1993. *See* V.S. Br. at 9; *see also* R.R. at 8a.

[5] Reports conflicted as to whether A.M.'s medical condition was caused by abuse or were symptoms of the H1N1 virus. However, no criminal charges were brought against V.S.

the enclosed form and check off the second box on the form.

**YOUR REQUEST MUST BE POSTMARKED WITHIN 45 DAYS FROM THE MAILING DATE ON THIS NOTICE.**

**IF YOUR REQUEST IS LATE, YOU MAY BE ON THE CHILD ABUSE REGISTER FOREVER.**

**This is a very serious matter.** You may wish to contact a lawyer to represent you. If you cannot afford a lawyer, call Pennsylvania Legal Aid Network at 1-800-322-7572. If you do not understand this Notice, you can call [DPW] at 717-783-1964.

Reproduced Record (R.R.) at 12a (emphasis in original). On May 14, 2011, V.S. timely requested a hearing. *See* R.R. at 13a; *see also* R.R. at 14a-15a. She wrote on the hearing request form: "There has [sic] been no criminal charges and no one has been accused of anything yet. We are having second opinions come in on their findings." R.R. at 13a.

By letter mailed June 21, 2011, DPW notified V.S. that based upon its review, the initial report was accurate, and the indicated report would remain as filed. The letter continued:

> However, **you do have the right to a hearing** before the Secretary of [DPW] or their [sic] designee, the [BHA].
>
> **If it is your desire to have a hearing, please submit your request in writing within 45 days of the date of this letter** to Child Abuse Appeals at the above address. . . . Your request will be forwarded to the [BHA] who will schedule a hearing and notify you of the time and place for the hearing.
>
> If you have any questions about the law or appeal process please write to Child Abuse Appeals or contact that office at 717-425-2992.

R.R. at 16a (underline emphasis in original; bold emphasis added). An appeal from DPW's June 21, 2011 determination was due by August 5, 2011.

However, more than three months later, on October 5, 2011, DPW received a letter from V.S., wherein she stated:[6]

> I [V.S.] am writing to request a hearing to appeal the letter that I received in the mail. I lost the original so I am just asking for either a new letter or to set up a date for the hearing. Even though it has been longer than the forty[-]five day limit, I am still asking to appeal it.

R.R. at 18a; *see also* R.R. at 17a, 19a. By February 27, 2012 letter, DPW notified V.S. that because her hearing request was postmarked more than 45 days after the June 21, 2011 letter, her request would not be honored. The letter further read, in pertinent part:

> Should you choose to take issue with this denial of your untimely request, please specify your concerns in writing to the above address. We will forward your request to the [BHA].
>
> Upon receipt of your letter the [BHA] will determine whether to consider your request as timely. They [sic] will contact you regarding a hearing and their decision.

R.R. at 20a.

Approximately two months thereafter, on April 30, 2012, V.S. responded to DPW:

> I am so sorry that I did not respond in a timely fashion. I realized only now how I may have jeopardized my entire future. I was very young being only sixteen and in an emotional turmoil. I have taken a poly-graph and was found to be innocent of any deception. Please consider giving me another opportunity to clear my name. According to your letter[] (see enclosed) I may still be

---

[6] V.S.' letter was dated September 14, 2011, but postmarked October 3, 2011.

considered for another chance.  Please give me that chance.
I'm worried.

R.R. at 21a.  A telephone hearing was held on July 5, 2012 solely on the timeliness issue before a BHA administrative law judge (ALJ).  V.S. participated pro se and testified at the hearing.

On July 27, 2012, the ALJ issued an adjudication recommending that V.S.' appeal be dismissed as untimely filed.  By August 6, 2012 order, BHA adopted the ALJ's adjudication in its entirety.  V.S. appealed to DPW's Secretary who, on July 1, 2014, upheld BHA's August 6, 2012 order.[7]  V.S. appealed to this Court.[8]

## *Nunc Pro Tunc* **Appeal**

V.S. first argues that DPW erred by denying her appeal *nunc pro tunc*. This Court has held:

> A perpetrator must request that an indicated report of child abuse be amended or expunged within forty-five (45) days of being notified of the indicated report.[9]   23 Pa.C.S. § 6341(a)(2).  An exception allows perpetrators to proceed *nunc pro tunc* where he or she can demonstrate that **the delay in requesting an appeal was caused by extraordinary circumstances involving fraud, a breakdown in the administrative processes**, <u>or</u> **non-negligent circumstances related to the petitioner, his counsel or a third party**.

---

[7] V.S. appealed from the August 6, 2012 order directly to this Court.  On February 12, 2013, based upon the parties' stipulation, this Court remanded the matter to DPW's Secretary.

[8] "Our 'scope of review in expunction proceedings is limited to a determination of whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence.'"  *K.R. v. Dep't of Pub. Welfare*, 950 A.2d 1069, 1073 n.6 (Pa. Cmwlth. 2008) (quoting *E.D. v. Dep't of Pub. Welfare*, 719 A.2d 384, 387 (Pa. Cmwlth. 1998)).

[9] An amendment to Section 6341(a) of the Law effective December 31, 2014 extended the period to 90 days.

*Beaver Cnty. Children & Youth Servs. v. Dep't of Pub. Welfare*, 68 A.3d 44, 48 (Pa. Cmwlth. 2013) (emphasis added). "It is well established that the failure to timely appeal an administrative agency's action is a jurisdictional defect. The time for taking an appeal therefore cannot be extended as a matter of grace or mere indulgence." *J.C. v. Dep't of Pub. Welfare,* 720 A.2d 193, 197 (Pa. Cmwlth. 1998) (citation omitted).

> A party seeking permission to file a *nunc pro tunc* appeal . . . needs to establish that: (1) [he] filed the appeal shortly after learning of and having an opportunity to address the untimeliness; (2) the elapsed time is one of very short duration; and (3) the respondent will not suffer prejudice due to the delay.

*Smith v. Pennsylvania Bd. of Prob. & Parole*, 81 A.3d 1091, 1094 n.4 (Pa. Cmwlth. 2013) (quoting *J.A. v. Dep't of Pub. Welfare,* 873 A.2d 782, 785 n.4 (Pa. Cmwlth. 2005)). Thus, "the 'petitioner in an appeal *nunc pro tunc* must proceed with reasonable diligence once he knows of the necessity to take action.'" *Id.* (quoting *Kamiski v. Montgomery Cnty. Bd. of Assessment Appeals*, 657 A.2d 1028, 1031 (Pa. Cmwlth. 1995)). "The question of whether there are unique and compelling facts, which establish a non-negligent failure to timely appeal, is a legal conclusion to be drawn from the evidence and is reviewable on appeal." *J.A.*, 873 A.2d at 785 n.5.

At the July 5, 2012 hearing, V.S. admitted that she received DPW's June 21, 2011 letter at her residence in June 2011. *See* R.R. at 73a-74a. Regarding why she failed to respond within 45 days, she testified:

> Well, I had my children taken because I was falsely accused of child abuse about a year and a half ago. I almost died during childbirth and [BCCYS] took my children at two weeks claiming child abuse, even though I had three doctors across the country testifying that my daughter had the

6

H1N1 virus, which she was tested for and proved positive. It was a burden for me only being 16 years old.[10]

I put my children up for adoption recently because I cannot give them the home that they deserve. And don't understand why they're trying to deny me a hearing: I know I made a mistake in being late, but I was only 16 years old at the time. I had just turned 17 when I got the letter in the mail. And honestly I didn't think it was going to be as serious as it is. I didn't hurt my children. I didn't do anything wrong, **so I didn't think the letter was that important because I didn't do anything. So I didn't think it was going to be this big of a deal.**

I assumed that they were going to be in foster care for a year and a half. And I don't think I should be punished for the rest of my life in being late for something that I didn't do.

R.R. at 72a-73a (emphasis added). In closing, V.S. stated:

Because I made a stupid mistake. I could have asked that --- there was court going on. I didn't do anything, though. I was falsely accused. I did not do anything. I didn't think it was going to go on that long because I didn't do anything. You know, there's people that should have been dealing with [BCCYS] other than me because my family, me, Ben, who is the father, he didn't do anything. **I don't think I should be punished for the rest of my life for not responding in a timely fashion because I didn't think it was going to be as serious as it was because I didn't do anything.** I didn't do anything wrong. I didn't hit my kids and I didn't hurt them in any way, so I don't think I should be punished for the rest of my life for not responding to a letter within 45 days. So what you're saying is I --- because I didn't respond to a letter within 45 days I'm going to be punished for the rest of my life? Is that right?

JUDGE:

Well, that's why I'm here to make a decision on it.

[V].S.:

---

[10] V.S. received DPW's June 21, 2011 letter approximately 8 weeks before her 18th birthday.

I don't think that that's okay. I don't think it's right at all.

R.R. at 78a-79a (emphasis added).

The reasons for V.S.' delay are mixed. In V.S.' October 2011 response to DPW's June 21, 2011 letter, she claimed to have **lost DPW's letter**. In her April 2012 hearing plea, she averred that she **only then realized how important it was to respond** to DPW's June 21, 2011 letter. V.S.' July 2012 testimony confirmed that she did not timely respond to DPW's June 21, 2011 letter because she **assumed** that since she did nothing to harm her child, **it was not important for her to timely respond**. At no point did V.S. claim that she was unaware of the appeal deadline, or that her delay was caused by any circumstance involving "extraordinary circumstances involving fraud, a breakdown in the administrative processes, or non-negligent circumstances." *Beaver Cnty. Children & Youth Servs.*, 68 A.3d at 48.

Moreover, V.S. clearly failed to "appeal shortly after learning of and having an opportunity to address the untimeliness[,]" and the elapsed time was not "one of very short duration[.]" *Smith*, 81 A.3d at 1094 n.4. V.S. admitted, and her October 2011 response clearly reveals, that she received DPW's June 21, 2011 decision and was aware that she had 45 days therefrom to request a hearing. *See* R.R. at 18a. Nevertheless, more than 3 months elapsed from the time she claimed she had lost the notice and the time she appealed. Even after DPW's February 2012 review explanation, she waited another 2 months to take action. Under the circumstances, the elapsed time was not of very short duration. *See Amicone v. Rok*, 839 A.2d 1109 (Pa. Super. 2003) (wherein a 4-month delay in filing a *nunc pro tunc* appeal was not reasonable); *see also Dep't of Transp., Bureau of Traffic Safety v. Johnson*, 569 A.2d 409 (Pa. Cmwlth. 1990) (wherein a 2-month delay in filing a *nunc pro tunc* appeal was not reasonable).

Thus, under the circumstances of this case, we have no choice but to hold that DPW did not err by denying V.S.' appeal *nunc pro tunc*.

8

**<u>Appointment of Counsel/Guardian Ad Litem</u>**

V.S. next argues that DPW violated her constitutional right to due process by failing to have a procedure in place which would afford her counsel or a guardian ad litem.

> The essential elements of due process are a notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction[] of the cause. *Dep[']t of Transp[.], Bureau of Driver Licensing v. Clayton,* . . . 684 A.2d 1060 ([Pa.] 1996). As the United States Supreme Court stated in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437 . . . (1982):
>
>> The State may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations . . . or, in an appropriate case, filing fees. And the State certainly accords due process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule. What the Fourteenth Amendment does require, however, 'is an opportunity . . . granted at a meaningful time and in a meaningful manner,' . . . 'for [a] hearing appropriate to the nature of the case,' . . . . (Citations omitted.)
>
> In this matter, [the petitioner] admittedly was given an opportunity to request a hearing to challenge the indicated report within forty-five days of the notice of the indicated report . . . . Having failed to comply with the reasonable procedural requirement under the [Child Protective Services Law (Law),[11]] and further failed to establish his entitlement to an appeal nunc pro tunc at the hearing scheduled for that purpose, [the petitioner] may not now complain that his constitutional right to due process was violated or that the Law is unconstitutional.

*J.C.*, 720 A.2d at 198. Based upon this Court's holding in *J.C.*, under nearly identical circumstances in which V.S. received notice and was afforded ample opportunity to

---

[11] 23 Pa.C.S. §§ 6301-6386.

9

be heard, yet failed to timely respond, we similarly hold that her constitutional right to due process was not violated.

First, V.S.' due process rights were not violated because "[t]he law is well settled that there is no right to counsel in civil cases." *Rich v. Acrivos*, 815 A.2d 1106, 1108 (Pa. Super. 2003). Indicated report expungement proceedings are civil administrative matters for which there is no right to counsel. *Dauphin Cnty. Soc. Servs. for Children & Youth v. Dep't of Pub. Welfare*, 543 A.2d 607 (Pa. Cmwlth. 1988); *L.W.B. v. Sosnowski*, 543 A.2d 1241 (Pa. Cmwlth. 1988).

Second, DPW is not authorized to appoint either counsel or a guardian ad litem for V.S. An agency may only adopt regulations in accordance with power the legislature has delegated to it. *Slippery Rock Area Sch. Dist. v. Unemployment Comp. Bd. of Review*, 983 A.2d 1231 (Pa. 2009); *Naylor v. Dep't of Pub. Welfare*, 54 A.3d 429 (Pa. Cmwlth. 2012), *aff'd*, 76 A.3d 536 (Pa. 2013). The Law does not authorize DPW to appoint V.S. counsel or a guardian ad litem under the circumstances presented here.[12] Although former versions of the Law required appointment of guardians ad litem for minor *victims*, the current Law does not contain a similar provision.[13] Moreover, there has never been a requirement under

---

[12] Counsel was appointed for V.S. for the dependency proceedings only. V.S. Br. at 9-10.

[13] Former Section 23(a) of the Law stated: "The court, when a proceeding has been initiated alleging child abuse, shall appoint a guardian ad litem for the child. The guardian ad litem shall be an attorney[]at[]law." *Dauphin Cnty. Soc. Servs.*, 543 A.2d at 610 (emphasis omitted) (quoting the Act of November 26, 1975, P.L. 438, *as amended*, *formerly* 11 P.S. § 2223(a), repealed by the Act of December 19, 1990, P.L. 1240. A similar provision was thereafter enacted in Section 6382(a) of the Law, 23 Pa.C.S. § 6382(a)).

Former Section 6382(a) of the Law similarly directed that "[w]hen a proceeding has been initiated alleging child abuse, the Court shall appoint a guardian ad litem for the child. The guardian ad litem shall be an attorney at law." *DeHaas v. DeHaas*, 708 A.2d 100, 102 (Pa. Super. 1998) (quoting Section 6382(a) of Law, 23 Pa.C.S. § 6382(a), repealed by the Act of May 10, 2000, P.L. 74). The current Law does not contain any similar language.

Section 3490.71 of DPW's Regulations, 55 Pa.Code § 3490.71, still provides that "[t]he county agency shall cooperate with and provide information to a guardian ad litem appointed under [S]ection 6382 of the [Law] (relating to guardian ad litem for [the] child in court proceedings) and

the Law that DPW must afford either adult or minor *perpetrators* counsel or guardians ad litem in indicated report expungement proceedings. This Court has further specifically held that statutory provisions requiring appointment of guardians ad litem in *court* proceedings do not similarly apply in *administrative* indicated report expungement proceedings. *Dauphin Cnty. Soc. Servs.*

Other statutory provisions protecting minors' interests are illustrative. Sections 6311, 6337, 6337.1 of the Juvenile Act, 42 Pa.C.S. §§ 6311, 6337, 6337.1, require that guardians ad litem and counsel are appointed to protect minors' interests *in dependency and delinquency proceedings*. Section 2313 of the Adoption Act, 23 Pa.C.S. § 2313, also mandates that legal counsel be appointed for minors and parents in *involuntary parental rights termination cases*, but makes representation by a guardian ad litem for the minors discretionary. Further, although Pennsylvania Orphan's Court Rule 15.4(c) expressly provides for appointment of guardians ad litem for minor parents, such appointments are authorized only *by the courts*, and then *only in parental rights termination/adoption cases* when they have no other adequate representation.

In *In the Matter of J.P.*, 573 A.2d 1057 (Pa. Super. 1990), the Pennsylvania Superior Court explained:

> Essentially, the theme espouses the principle that in delinquency, dependency or adoption cases involving children, **the constitutional provisions, rules and laws designed to govern proceedings in adult criminal or civil actions are not necessarily applicable or desirable**. Underlying this consideration is the belief that despite some misgivings about shortcomings in these types of proceedings, there is a retained belief that **such proceedings are not purely adversarial and that traditional concepts of Parens Patriae, and the focus on the unity of the family and the best interest of the child,**

---

the court[-]designated advocate[,]" however, because Section 6382(a) of the Law has been repealed, Section 3490.71 of DPW's Regulations is no longer effective.

11

**are sufficiently important to avoid hindering the court with procedural and technical limitations.** The court could thereby focus a greater degree of its energies and resources in bringing about family unity and rehabilitation.

*Id.* at 1062 (emphasis added). This Court has clarified that "[t]he Law seeks to protect children from abuse, not to punish alleged abusers." *L.W.B.,* 543 A.2d at 1242 (footnote omitted). Specifically,

> the purpose of the [Law] is to bring about quick and effective reporting of suspected child abuse so as to serve as a means for providing protective services competently and to prevent further abuse of the children while providing rehabilitative services for them and the parents. 23 Pa.C.S. § 6302(b). To the degree possible, the Law also is geared to the stabilization of the family where appropriate. The Law does not provide for legal determinations of abuse; it is mainly a vehicle for reporting abuse and bringing quickly into play those services (including court hearings) available through county protective service facilities for the care of the child.

*In the Interest of J.R.W.*, 631 A.2d 1019, 1021-22 (Pa. Super. 1993).

Even the General Assembly's recent amendments to the Law would not afford V.S. representation by either counsel or a guardian ad litem. Section 6381(e) of the Law, effective December 31, 2014, now provides that

> any consideration afforded to a child victim or witness pursuant to 42 Pa.C.S. Ch. 59 Subch. D (relating to child victims and witnesses)[14] in any prosecution or adjudication

---

[14] Section 5983(a) of the Judicial Code, provides:

> **Designation of persons to act on behalf of children.--**Courts of common pleas may designate one or more persons as a child advocate to provide the following services on behalf of children who are involved in criminal proceedings as victims or material witnesses:
>
> (1) To explain, in language understood by the child, all legal proceedings in which the child will be involved.

12

> shall be afforded to a child in child abuse proceedings in court or in any department administrative hearing pursuant to [S]ection 6341 [of the Law (relating to records expungement)].

23 Pa.C.S. § 6381(e). However, the term "[c]hild," as used in that subsection is defined as "[a]n individual . . . **under 16 years of age**." 42 Pa.C.S. § 5982 (emphasis added). Moreover, in newly-enacted Section 6338.1 of the Law, 23 Pa.C.S. § 6338.1, effective December 31, 2014, which now sets forth the procedure to expunge *minor perpetrators'* indicated reports, the General Assembly still does not require that DPW appoint counsel or a guardian ad litem for minors in V.S.' circumstances.[15]

Third, the factors enumerated in *Mathews v. Eldridge*, 424 U.S. 319 (1976) are not met in this case. In *R. v. Department of Public Welfare*, 636 A.2d 142 (Pa. 1994), our Supreme Court adopted the United States Supreme Court's methodology for reviewing claims of a violation of a citizen's right to their reputation under due process; specifically, one who is seeking to challenge expungement procedures under the Law as violating due process under the Pennsylvania Constitution. The Pennsylvania Supreme Court set forth the following factors to be considered:

---

> (2) As a friend of the court, to advise the judge, whenever appropriate, of the child's ability to understand and cooperate with any court proceedings.
>
> (3) To assist or secure assistance for the child and the child's family in coping with the emotional impact of the crime and subsequent criminal proceedings in which the child is involved.

42 Pa.C.S. § 5983(a). "Minor" is defined in this subsection of the Judicial Code as "[a]n individual who, at the time of the commission of the offense involving sexual or physical abuse, is under 18 years of age." 42 Pa.C.S. § 5982.

[15] Section 6338.1 of the Law states that, subject to certain conditions, the names of perpetrators who committed abuse before they were 18 years old will be expunged from ChildLine after five years, or they turn 21 years old, whichever is later.

13

First, the **private interest** that will be affected by the official action; second, the **risk of an erroneous deprivation** of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the **Government's interest**, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail.

*R.*, 636 A.2d at 146 (emphasis added) (quoting *Mathews*, 424 U.S. at 335).

Regarding the first *Mathews* factor, V.S. argues that the private interest at stake is her reputation. In *A.Y. v. Department of Public Welfare, Allegheny County Children and Youth Services*, 641 A.2d 1148 (Pa. 1994), our Supreme Court stated:

Although less process is due in an administrative proceeding than where criminal charges have been brought, an administrative adjudication of suspected child abuse is of the most serious nature. Therefore, this society, which was founded upon, *inter alia*, its citizens' 'inherent and indefeasible rights . . . of acquiring, possessing and protecting property and *reputation*,' cannot blithely surrender those rights in the name of prosecutorial convenience.

*Id.* at 1152 (footnote omitted). More recently, the Supreme Court concluded that since the Law limits the persons with access to information contained in an indicated report on ChildLine, a perpetrator "[is] not being stigmatized in the eyes of the general public, and the adverse effects on his reputation [a]re very limited." *G.V. v. Dep't of Pub. Welfare*, 91 A.3d 667, 672-73 (Pa. 2014).

With respect to the second *Mathews* factor, we consider the risk of an erroneous deprivation of V.S.' interest through DPW's failure to appoint her counsel or a guardian ad litem for her expungement case. As a general matter, the Supreme Court held that in reaching a conclusion on this factor, we must be

mindful of the nature of the inquiry being conducted at an expungement hearing . . . . An expungement hearing is

14

> devoted to determining whether information in an indicated report is either inaccurate or is being maintained in a manner inconsistent with the [Law]. 23 Pa.C.S. § 6341(c), (d).

*R.*, 636 A.2d at 150. "[DPW] or [the] county agency shall bear the burden of proving by substantial evidence that the report should remain categorized as an indicated report." 23 Pa.C.S. § 6341(c.2)(5).

V.S. contends that without counsel or a guardian ad litem, "there is a great risk that minor subjects of an indicated report may be denied a hearing on the merits of the case." V.S. Br. at 16. She argues that the "bewildering experience" of being a minor falsely accused of abusing her newborn twins and then having to understand the notices put her at risk of losing her expungement case without counsel or a guardian to advise her.

According to the record, V.S. was only 6½ months shy of her 18th birthday when she had the twins. She was approximately 4 months from turning 18 years of age when she received the indicated report notice in April 2011. The notice advised her that she may wish to retain counsel due to the seriousness of the impact the indicated report would have on her life. *See* R.R. at 12a. The notice also specified who to contact in the event she had any questions. *See* R.R. at 12a. In May 2011, V.S. timely and articulately followed the initial review request instructions. *See* R.R. at 13a. In June 2011, just 8 weeks before she turned 18 years of age, V.S. received notice that the review did not change DPW's decision, and she was instructed to request a hearing within 45 days. This notice also contained contact information in case she had any questions. *See* R.R. at 16a. V.S. did not respond until October 2011, and reported she "lost the original" document. R.R. at 18a. Subsequently, at the *nunc pro tunc* hearing, she stated that she did not think the hearing request was important because she did not abuse her child as alleged. *See* R.R. at 72a. At the July 5, 2012 *nunc pro tunc* hearing she claimed for the first time

15

that emotional turmoil and her age (which she incorrectly represented was 16) caused her untimeliness. *See* R.R. at 21a, 72a. V.S. also referenced relinquishing custody of her children, but the timing of that process is not clear in this record.[16] Although we are sympathetic to V.S.' circumstances, and it is possible that being represented by counsel or a guardian ad litem in this circumstance may have reduced the risk of V.S.' untimeliness, we cannot conclude under the specific circumstances of this case that V.S. was incapable of following DPW's instructions in June/July 2011, or that the procedure employed by DPW created the risk that V.S. would suffer an erroneous deprivation of her interests.

The final *Mathews* factor is the government's interest, which the Law expressly details in Section 6302, in pertinent part:

> **(a) Findings.--**Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment.
>
> **(b) Purpose.--**It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

---

[16] DPW's claim notwithstanding, there is no evidence that counsel appointed for V.S. in any other proceeding was authorized by statute or regulation to represent her regarding the expungement matter.

23 Pa.C.S. § 6302.

> [The Pennsylvania Supreme] Court has recognized that the Commonwealth's interests in the need to prevent child abuse and to protect abused children from further injury is fostered by maintenance of the statewide central registry identifying perpetrators of abuse. The government's interest in addressing the urgent need of abused children for protection from further injury and impairment encompasses both the child or children who were actually abused by the perpetrator, as well as any children who may potentially be abused by the perpetrator.

*G.V.*, 91 A.3d at 673-74 (citation omitted). We find the *R.* Court's conclusion as to this factor applicable here:

> On balance, the procedures that were utilized [by DPW] created a very limited risk that [V.S.] would suffer an erroneous deprivation. However, in view of the narrow range of situations in which [V.S.'] identity is revealed and the governmental interest these few permissible disclosures are designed to serve, the deprivation itself was likewise very limited. Under the circumstances, we conclude that [V.S.] received all the process [s]he was due under the Fourteenth Amendment to the United States Constitution.

*R.*, 636 A.2d at 152. Therefore, we hold that DPW did not violate V.S.' constitutional right to due process by failing to assign her counsel or a guardian ad litem.

## Minor Tolling Statute

Lastly, V.S. argues that DPW erred by failing to toll the appeal period until she turned 18 years of age. Section 5533(b)(1)(i) of the Judicial Code (hereafter, Minority Tolling Statute) provides:

> If an individual **entitled to bring a civil action** is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.

42 Pa.C.S. § 5533(b)(1)(i) (emphasis added). Our Superior Court has clarified:

> [T]he [Minority Tolling Statute] addresses situations in which a minor has no parent or guardian **to bring suit** on its behalf, or whose parent or guardian may, for any number of perfectly valid reasons, be unwilling or unable to do so. Adults may choose not to exercise their own rights; minors, unable to exercise their rights, require protection until able to make the decision of whether to pursue the matter.

*Robinson v. Pennsylvania Hosp.*, 737 A.2d 291, 294 (Pa. Super. 1999) (emphasis added); *see also Fancsali v. Univ. Health Ctr. of Pittsburgh*, 761 A.2d 1159, 1164 (Pa. 2000) ("the period within which a minor's **action must be commenced** is measured . . . from the time he or she turns eighteen" (emphasis added)); *Foti v. Askinas*, 639 A.2d 807 (Pa. Super. 1994). Thus, "[t]he purpose of the Minority Tolling Statute was to give minors an equal opportunity to **bring a cause of action**." *Foti*, 639 A.2d at 809 (emphasis added).

It is evident that the General Assembly and the courts have deemed the Minor Tolling Statute applicable to matters in which a minor initiates a civil lawsuit in a court of record, and not those in which a minor is appealing from an administrative decision. Specifically, in *East v. Workers' Compensation Appeal Board (USX Corp./Clairton)*, 828 A.2d 1016 (Pa. 2003), the Pennsylvania Supreme

Court held that "a workers' compensation proceeding is not a 'civil action,' as that term is used in the Minority Tolling Statute." *Id.* at 1023. In reaching its conclusion, the Supreme Court reasoned:

> While Claimant is correct that the Legislature has failed to specifically define the term 'civil action', the term appears in more than five hundred separate legislative provisions. . . . [O]ur examination of each of these has revealed persuasive evidence that the Legislature uses the term in a way that does not encompass proceedings before the workers' compensation authorities. Most revealing in this regard are those provisions in which 'civil actions' are expressly distinguished from 'administrative proceedings', thereby demonstrating that the former excludes the latter. The majority of these statutory exemplars express the understanding that '**civil actions**' **are those commenced and conducted in a court of record, involving traditional common law claims for damages or equitable relief governed by the Pennsylvania Rules of Civil Procedure**.

*Id.* at 1021-22 (footnotes omitted; emphasis added).

Because the instant case involves V.S.' appeal from an administrative determination, rather than the commencement of a civil action in a court of record, we are constrained to hold that the Minor Tolling Statute does not apply here. Therefore, DPW did not err by failing to toll the appeal period until V.S. turned 18 years of age.

## Expungement by Operation of Law

This Court takes notice that the addition of Section 6338.1 to the Law, which became effective on December 31, 2014 while V.S.' appeal was pending before this Court,[17] may apply to the facts of this case. That provision states:

---

[17] "The court will take judicial notice of public statutes." *In re Annual Controller's Reports for Years 1932, 1933, 1934, 1935 & 1936, Inclusive*, 5 A.2d 201, 204 (Pa. 1939).

Section 6338.1 of the Law was added by Section 2 of the Act of December 18, 2013, P.L. 1195.

19

**(a) General rule.--**The name of a perpetrator who is the subject of an indicated report of child abuse and **who was under 18 years of age when the individual committed child abuse shall be expunged from [ChildLine] when the individual reaches 21 years of age or when five years have elapsed since the perpetrator's name was added to [ChildLine], whichever is later,** if the individual meets all of the following:

(1) The individual has not been named as a perpetrator in any subsequent indicated report of child abuse and is not named as an alleged perpetrator in a child abuse report pending investigation.

(2) The individual has never been convicted or adjudicated delinquent following a determination by the court that the individual committed an offense under [S]ection 6344(c) [of the Law] (relating to employees having contact with children; adoptive and foster parents), and no proceeding is pending seeking such conviction or adjudication.

(3) The child abuse which resulted in the inclusion of the perpetrator's name [on ChildLine] did not involve the use of a deadly weapon, as defined under 18 Pa.C.S. § 2301 (relating to definitions).

**(b) Mandated expunction.--If the perpetrator meets all of the requirements under subsection (a), the expunction shall be mandated and guaranteed by [DPW].**

**(c) Nonapplicability.--**The provisions of this section shall not apply to any of the following cases:

(1) A perpetrator who is the subject of a founded report of child abuse.

(2) A sexually violent delinquent child, as defined in 42 Pa.C.S. § 9799.12 (relating to definitions), who meets all of the following:

(i) Is required to register under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).

20

> (ii) Was found delinquent as a result of the same acts which resulted in the sexually violent delinquent child being named a perpetrator of child abuse.
>
> (3) A juvenile offender, as defined in 42 Pa.C.S. § 9799.12, who meets all of the following:
>
> > (i) Is required to register under 42 Pa.C.S. Ch. 97 Subch. H as a result of an adjudication of delinquency for the same acts which resulted in the juvenile offender being named a perpetrator of child abuse.
> >
> > (ii) Has not been removed from the Statewide Registry of Sexual Offenders pursuant to 42 Pa.C.S. § 9799.17 (relating to termination of period of registration for juvenile offenders).
>
> (4) A sexual offender, as defined in 42 Pa.C.S. § 9799.12, who meets all of the following:
>
> > (i) Is required to register under 42 Pa.C.S. Ch. 97 Subch. H as a result of a criminal conviction for the same acts which resulted in the sexual offender being named a perpetrator of child abuse.
> >
> > (ii) Has not completed the period of registration required under 42 Pa. C.S. § 9799.15 (relating to period of registration).

23 Pa.C.S. § 6338.1 (text emphasis added).

Although Section 6338.1 of the Law was enacted after V.S. became the subject of an indicated report, the General Assembly clearly made Section 6338.1(a) of the Law applicable to "a perpetrator who is the subject of an indicated report" as of its December 31, 2014 effective date.[18]  23 Pa.C.S. § 6338.1(a).  The abuse for which

---

[18] "[A]n act . . . is not impermissibly construed retroactively when applied to a condition existing on its effective date, even though the condition results from events which occurred prior to that date."  *R & P Servs., Inc. v. Dep't of Revenue*, 541 A.2d 432, 434 (Pa. Cmwlth. 1988); *see also Sher v. Berks Cnty. Bd. of Assessment Appeals*, 940 A.2d 629 (Pa. Cmwlth. 2008).

21

V.S. is the subject of an indicated report on ChildLine purportedly occurred in January or February 2011. DPW notified V.S. by April 11, 2011 letter that her name had been listed on ChildLine. She appealed to this Court on July 14, 2014. V.S. turned 21 years old on August 25, 2014. V.S. and DPW filed their briefs with this Court on October 2, 2014 and December 1, 2014, respectively. Because the anniversary of V.S.' name being listed on ChildLine occurs later in time than when she turned 21 years of age, the date V.S.' name was listed on ChildLine would be the triggering event in this case. Thus, **if V.S. meets the criteria specified in Section 6338.1 of the Law, it appears that her name may be expunged from ChildLine by April 11, 2016**.

Based upon the foregoing, DPW's Final Order is affirmed.

_____
ANNE E. COVEY, Judge

22

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

V.S.,                                    :    **SEALED CASE**
                    Petitioner           :
                                         :
          v.                             :
                                         :
Department of Public Welfare,            :    No. 1186 C.D. 2014
                    Respondent           :

O R D E R

AND NOW, this 30th day of December, 2015, the Department of Public Welfare's July 1, 2014 Final Order is affirmed.

_____
ANNE E. COVEY, Judge