IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Prestige Design and : 
Construction on 7th LLC :
:
From the Decision of City of :
Philadelphia Board of Revision :
of Taxes :
:
Appeal of: Prestige Design and : No. 629 C.D. 2022
Construction on 7th LLC : Submitted: July 7, 2025

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON           FILED: August 22, 2025


Prestige Design and Construction on 7th LLC (Prestige on 7th) appeals from an order entered by the Court of Common Pleas of Philadelphia County (Common Pleas) on May 17, 2022. Common Pleas denied Prestige on 7th's request for *nunc pro tunc* relief for an untimely statutory appeal regarding an adjudication entered on February 3, 2022 by the City of Philadelphia Board of Revision of Taxes (Board). That adjudication denied Prestige on 7th's *nunc pro tunc* abatement appeal for the 2017 tax year[1] relative to its property located at 1417 North 7th Street, Philadelphia (Property). Upon review, we affirm Common Pleas' order.

---

[1] At least one document in the reproduced record refers to the abatement application as relating to tax year 2019. Reproduced Record (RR) at 36. The discrepancy, however, is not material to our disposition of this appeal.

## I. Background

Prestige on 7th is the owner of the Property. Reproduced Record (RR) at 111-12.[2] Prestige on 7th and the various other LLC entities discussed herein are all solely owned by Ofir Komerian (Komerian). *Id.* at 112.

Prestige on 7th alleges that it hired professionals to file property tax abatement applications on its behalf but that the application for the Property was not timely filed. RR at 111-14. By letter dated August 8, 2018, the Philadelphia Office of Property Assessments denied the abatement application for the Property due to "Late Filing," according to a box checked on the form letter. *Id.* at 21.

Allegedly unaware that its abatement professional and previous attorney had not filed an appeal, Prestige on 7th did not file an appeal to the Board from the denial of the abatement application for two to three years. RR at 119-21. By letter dated January 24, 2022, the Board denied *nunc pro tunc* relief for late filing of the abatement application. *Id.* at 23.

Prestige on 7th appealed to Common Pleas from the Board's denial of *nunc pro tunc* relief. On May 16, 2022, Common Pleas held a hearing that included both live testimony from Komerian and oral argument by the parties' counsel. Komerian acknowledged that he had been in the construction industry for some 20 years, that he was familiar with the 60-day time limit to file a tax abatement application after the issuance of a building permit, that the permit for the Property was issued December 21, 2017, and that the related abatement application was due on February 19, 2018. RR at 115-19. Komerian testified that he "hired a

---

[2] The pages in the reproduced record are not properly numbered as required by Rule 2173 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2173 (requiring pages of the reproduced record to be numbered separately in Arabic figures followed by a small a, thus 1a, 2a, 3a, etc.). For clarity, the pages of the reproduced record are cited herein using the page numbers as they appear in the reproduced record.

2

professional expediter to do all the paperwork for the tax abatement" and also hired an attorney to see to the filing. *Id.* at 113-14. He alleged that both professionals failed to assure the timely filing of the tax abatement application for the Property. *Id.* Komerian asserted that he himself "was not exactly focused with everything" due to a fire that occurred at his house "around the time" the abatement application was due. *Id.* at 114. Upon questioning from the Common Pleas judge, however, Komerian could not recall the date, or even the year, in which the fire occurred. *See id.* He asserted that "[i]t could be a month, it could be a couple of months" before the application was due. *Id.* at 117. He ultimately conceded, however, that the fire was in the summer, "well before" the building permit that triggered the requirement to file the abatement application was issued on December 21, 2017. *Id.* at 117-18. He also testified that he did not first realize that the tax abatement application was untimely until years later, although he acknowledged that he received and paid property tax bills for the Property during those intervening years. *Id.* at 119-21.

Following the May 16, 2022 hearing, on May 17, 2022, Common Pleas entered an order denying Prestige on 7th's appeal and requested relief "for lack of merit" based "upon evaluation of incredible testimony and non-persuasive evidence and arguments of counsel that had been presented . . . during [the] hearing . . . ." RR at 133. This appeal followed.

## II. Issues

On appeal, Prestige on 7th asserts issues that we reorganize and paraphrase as follows.

First, Prestige on 7th asserts that Common Pleas erred by holding a *de novo* hearing in a statutory appeal without first making a determination that the

record before the Board was incomplete. Prestige on 7th further argues that no party contended that the Board's record was incomplete. Prestige on 7th also asserts that Common Pleas erred by conducting an examination of Prestige on 7th's witness from the bench, where that witness had already been subject to cross-examination in the proceeding before the Board.

Second, Prestige on 7th maintains that Common Pleas should have granted the appeal from the Board's adjudication because the Board previously granted four other *nunc pro tunc* appeals relating to other real properties in the same area that involved the same parties and similar legal issues. Prestige on 7th posits that, based on the dispositions of these previous cases, the Board was precluded by *res judicata* and/or collateral estoppel from denying relief in this case.

### III. Discussion

### A. *De Novo* Hearing; Complete or Incomplete Record

The level of review provided by a court of common pleas regarding a local agency decision depends on whether the agency record is complete. This Court has explained:

> The general rule under Section 754(a) of the Local Agency Law, 2 Pa. C.S. § 754(a), is that if a full and complete record is not made before an agency, a court may hear the appeal *de novo* or remand for further proceedings. Under the Local Agency Law, the question of what standard to apply depends on whether the "record before the local agency is full and complete." *Powell v. Middletown Twp. Bd. of Supervisors*, 782 A.2d 617, 621 (Pa. Cmwlth. 2001). A record "is full and complete if there is a complete and accurate record of the testimony taken so that the appellant is given a basis for the appeal and if the court is given a sufficient record upon which to rule on questions presented." *Id.* The key determination is "whether the trial court accepted additional evidence." *Bolus v. City of*

4

*Scranton Dep't of Licensing, Inspections and Permits . . .*
(Pa. Cmwlth., No. 202 C.D. 2018, filed May 2, 2019).[Fn]

> Fn:    While not binding precedent, unreported opinions of this Court may be cited for their persuasive authority under Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

*Churchill Cmty. Dev., LP v. Allegheny Cnty. Health Dep't*, 225 A.3d 596, 605 (Pa. Cmwlth. 2019). Accordingly, we must first consider whether Common Pleas held a *de novo* hearing and, if so, whether such a hearing was proper.

Common Pleas began the proceeding by inviting "argument" from counsel. RR at 99. Prestige on 7th's counsel presented an argument in which he advocated for the application of *res judicata* and collateral estoppel, averring that the Board had granted four previous appeals involving "the same parties, the same facts" and "almost identical" dates. *Id.* at 100. The City's counsel responded, in opposition, that the parties were "in a statutory *de novo* appeal" without a record or transcript from below. *Id.* at 105.

In addition to oral argument, however, Prestige on 7th also provided some sworn testimony by Komerian. As set forth in detail above, Komerian acknowledged that the application and appeal were both filed late, but he blamed the delays on a professional expediter and his previous attorney who allegedly failed to make timely filings on behalf of Prestige on 7th. RR at 113-14. Komerian also averred that he was personally dealing with fire damage to his house during the relevant time period. *Id.* at 114. Komerian maintained that this course of events constituted non-negligent circumstances justifying *nunc pro tunc* relief. *Id.* at 101-04 & 127-28.

In response, the City pointed out that Prestige on 7th failed to meet the initial tax abatement application deadline, and then it also failed to file a timely

appeal from the denial of that application. RR at 107-08. The application sought abatement beginning with tax year 2017, but no appeal from the denial was taken until 2021. *Id.* at 108. Prestige on 7th argued that its former legal counsel negligently failed to file a timely application and then also failed to file a timely appeal. The City posited, however, that Prestige on 7th would have had independent notice of the denial and should have appealed prior to 2021, even if its former counsel failed to act, because Prestige on 7th would have received tax bills and paid taxes for the tax years from 2017 through 2021, thus having notice that there had been no abatement. *Id.* at 108-09. Komerian acknowledged that those tax bills were received and paid. *Id.* at 109.

Notably, the record does not include a transcript of any proceeding before the Board. Accordingly, the record before Common Pleas lacked "a complete and accurate record of the testimony taken" before the Board, such that Common Pleas was not "given a sufficient record upon which to rule on the questions presented." *Powell*, 782 A.2d at 621. Moreover, Prestige on 7th did not disagree with the City's assertion at the hearing that the proceeding was a statutory *de novo* appeal without a transcript from the Board proceeding. *See* RR at 105. Indeed, far from opposing Common Pleas' holding of a *de novo* hearing, Prestige on 7th provided the only live testimony presented at that hearing. Having failed to argue before Common Pleas that the record was complete, Prestige on 7th cannot argue on appeal that Common Pleas erred in taking additional evidence. *See Riccio v. Newtown Twp. Zoning Hearing Bd.*, 308 A.3d 928, 940 (Pa. Cmwlth. 2024) (explaining that "[i]ssues not raised in the trial court are waived and cannot be raised on appeal"). Because the record was incomplete, Common Pleas properly took additional testimony on the question of *nunc pro tunc* relief.

6

"Where the lower court has heard the case *de novo*, this Court's proper scope of review is to determine whether the facts found by the trial court are supported by competent evidence and to correct any conclusions of law erroneously made." *Med. Shoppe, Ltd. v. Wayne Mem'l Hosp.*, 866 A.2d 455, 459 n.10 (Pa. Cmwlth. 2005) (citing *Dep't of Transp., Bureau of Driver Licensing v. Boros*, 620 A.2d 1139 (Pa. 1993)). With this standard in mind, we examine Common Pleas' denial of *nunc pro tunc* relief.

"It is well established that the failure to timely appeal an administrative agency's action is a jurisdictional defect. The time for taking an appeal therefore cannot be extended as a matter of grace or mere indulgence." *V.S. v. Dep't of Pub. Welfare*, 131 A.3d 523, 527 (Pa. Cmwlth. 2015) (additional quotation marks and citation omitted). Accordingly, the party seeking *nunc pro tunc* relief bears a heavy burden. An untimely appeal *nunc pro tunc* may be granted only in extraordinary circumstances involving fraud, breakdown in the court or agency's operation, or non-negligent circumstances either of the claimant or a third party. *Angels of Care by TLM, LLC v. Dep't of Hum. Servs.*, 323 A.3d 250, 258 (Pa. Cmwlth. 2024). Further, where a request for *nunc pro tunc* relief alleges that non-negligent circumstances caused the untimeliness of an appeal, the appeal must be filed within a short period of time after learning of the untimeliness. *Id.*

Here, Prestige on 7th admittedly received and paid tax bills for the tax years 2017 and after, which bills clearly revealed that tax abatement had not been granted. Nonetheless, Prestige on 7th delayed for *years* before filing an appeal from the denial of its abatement application. By no stretch of reasoning can that be considered a delay of short duration as required for *nunc pro tunc* relief.

Further, although the record includes testimony concerning personal stress arising from a house fire allegedly suffered by Komerian during the relevant time period, he is a sophisticated businessman and property developer. RR at 130. Komerian was apparently able to continue running his various companies throughout the relevant time period. *Id.* (Common Pleas' finding that "[p]er [Komerian's] testimony, the fire at his home was not the location of his business, and indeed it did not impede his business in applying for building permits, moving forward with the various businesses that he had, and still does"). Common Pleas plainly did not credit Komerian's testimony asserting non-negligence. *See id.* (Common Pleas' finding that Komerian was "responsible for the negligence that occurred. . . . . He is an experienced businessman in the industry and knew the rules. There was a negligent delay, both for filing within the 60-day time period, that was not done, to [sic] the subsequent delays which were attributed to negligence."); *see also id.* at 133 (concluding that Prestige on 7th's position lacked merit based on "incredible testimony and non-persuasive evidence and arguments of counsel . . ." ).

Notably, this Court has repeatedly held that the pressures of life events do not legally justify *nunc pro tunc* relief. In *Douglas v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 226 C.D. 2022, filed November 17, 2022),[3] we concluded that *nunc pro tunc* relief was not appropriate where the petitioner "asserted that her appeal was late because she [was] a victim of domestic violence, she ha[d] various health issues, and she was not checking for mail on a regular basis; further, she did not have cell phone or internet service." *Id.*, slip op. at 2. This Court rejected the petitioner's argument that these facts established non-negligent circumstances supporting *nunc pro tunc* relief; we explained:

---

[3] This unreported opinion is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

8

Pennsylvania law is settled that "[t]he pressure of life events is . . . insufficient to excuse an untimely . . . appeal." *Carney v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 1286, 1288 (Pa. Cmwlth. 2018) (additional citations omitted). This Court has repeatedly held that *nunc pro tunc* relief was not available in situations analogous to, or even more exigent than, those in which Claimant found herself here. *See, e.g.*, *Constantini v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 838, 845 (Pa. Cmwlth. 2017) (concluding that claimant's late appeal was not excusable, although she was "dealing with several ongoing legal issues, a malware virus attack on her computer network, lost data from her wireless devices, and medical emergency appointments during the 15-day appeal period"); *Dull v. Unemployment Comp. Bd. of Rev.*, 955 A.2d 1077, 1080 (Pa. Cmwlth. 2008) (denying *nunc pro tunc* relief where, although claimant had an I.Q. of only 76, delay was her own fault for failing to seek anyone's help); *Maloy v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1009 C.D. 2015, . . . filed April 13, 2016) (denying *nunc pro tunc* relief where claimant was living around the corner from her mailing address and depending on neighbors to bring her mail while she was dealing with her brother's death, moving, and caring for her daughter and sick mother during the appeal period); *Burgher v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1929 C.D. 2014, . . . filed July 7, 2015) (concluding that claimant dealing with anxiety and stress from layoff did not establish non-negligent circumstances); *Rabe v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1785 C.D. 2013, . . . filed February 24, 2014) (denying *nunc pro tunc* relief to claimant who was dealing with financial stress and multiple pending court cases during appeal period); *Menges v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 2230 C.D. 2009, . . . filed April 22, 2010), slip op. at 8-9 (determining that claimant dealing with a death in the family and lingering effects of a medical condition did not establish non-negligent circumstances).

Here, Claimant similarly failed to establish that her delay of two months in filing an appeal . . . was the result of non-negligent circumstances. Although she alleged that she was dealing with the pressure of various life events, such

events do not constitute non-negligent circumstances justifying *nunc pro tunc* relief.

*Id.*, slip op. at 3-5; s*ee also Borough of Bellefonte v. Dep't of Env't Res.*, 570 A.2d 129, 131 (Pa. Cmwlth. 1990) (denying *nunc pro tunc* relief where the person responsible for mailing the appeal notice was not unable to mail it but failed to do so because of "emotional and mental distress which was caused by marital and domestic problems and an upcoming change in jobs"); *Commonwealth v. Nicholas*, 592 A.2d 98, 101 (Pa. Super. 1991)[4] (denying *nunc pro tunc* relief for an untimely appeal of a summary criminal conviction where the appellant stated he was "under stress as a result of his father's death and was emotionally unable to render a decision regarding his appeal" because "he was in such a state of emotional shock that he was not paying attention to his daily affairs") (additional quotation marks omitted).[5] Similarly, here, the pressures of dealing with the damage from a house fire cannot justify delaying for *years* in filing an appeal. Common Pleas, therefore, did not err

---

[4] Although opinions of the Superior Court are not binding on this Court, we may cite them as persuasive where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[5] In contrast to the cited cases, *nunc pro tunc* relief has been granted, albeit rarely, in exigent circumstances that made timely filing of an appeal impossible. Such circumstances are distinguishable from the pressures and stresses advanced in the cases cited above. For example, in *Cook v. Unemployment Compensation Board of Review*, 671 A.2d 1130 (Pa. 1996), the appellant had promptly scheduled an appointment with an attorney to arrange for an appeal, but before the appointment date, the appellant collapsed and was hospitalized and placed in the hospital's cardiac care unit. *Id.* at 1131. He remained hospitalized until one day after the appeal deadline and filed the appeal three days later. *Id.* In those circumstances, our Supreme Court held that *nunc pro tunc* relief was appropriate, in that the appellant "met his heavy burden of proving an adequate excuse" for the late filing and "pursued his appeal promptly upon release from the hospital. . . ." *Id.* at 1132. *See also Tony Grande, Inc. v. Workmen's Comp. Appeal Bd. (Rodriguez),* 455 A.2d 299 (Pa. Cmwlth. 1983) (holding that an appeal *nunc pro tunc* was warranted where the appeal was late due to the sudden heart attack and hospitalization of the appellant's attorney).

10

in declining to accept Prestige on 7th's assertion that Komerian's house fire excused compliance with filing deadlines.

Likewise, the allegedly negligent conduct of Prestige on 7th's former attorney or other agent in failing to file a timely tax abatement application and a timely appeal from the denial of that application does not support *nunc pro tunc* relief. As this Court has explained, "an attorney's negligence in filing an untimely appeal (as opposed to non-negligent circumstances such as illness) does not warrant the allowance of an appeal *nunc pro tunc* . . . ." *Schofield v. Dep't of Transp., Bureau of Driver Licensing*, 828 A.2d 510, 512 (Pa. Cmwlth. 2003) (citing *Alles v. Dep't of Transp., Bureau of Driver Licensing*, 773 A.2d 126 (Pa. 2001) (*per curiam*)). Accordingly, Common Pleas did not err in rejecting Prestige on 7th's assertion of non-negligent circumstances.

We also reject Prestige on 7th's contention that Common Pleas erred by questioning Komerian during his testimony. A "judge has the right to question witnesses to clarify disputed issues or vague evidence." *Merrell v. Chartiers Valley Sch. Dist.*, 51 A.3d 286, 299 (Pa. Cmwlth. 2012). Here, as set forth above, the Common Pleas judge questioned Komerian to clarify the timing of his house fire in relation to the filing period for the tax abatement application, as well as the lengthy delay in appeal from the denial of the application while receiving and paying property tax bills for the Property. That information was relevant to Komerian's credibility and his assertion of non-negligent circumstances regarding the request for *nunc pro tunc* relief. Further, we observe that Prestige on 7th did not object to the judge's questioning of Komerian during the hearing. As stated above, "[i]ssues not raised in the trial court are waived and cannot be raised on appeal." *Riccio*, 308 A.3d at 940. Therefore, Prestige on 7th waived its objection to the judge's questioning.

11

For these reasons, we discern no error in Common Pleas' conclusion that Prestige on 7th was not entitled to *nunc pro tunc* relief.

**B. *Res Judicata* and/or Collateral Estoppel**

Prestige on 7th also posits that the Board previously granted four other *nunc pro tunc* appeals relating to other real properties in the same area involving the same parties and similar legal issues. Prestige on 7th insists that these previous dispositions estopped the Board from denying relief in this case, based on *res judicata* and/or collateral estoppel. We disagree.

**1. *Res Judicata***

Application of *res judicata* requires "an *identity of issues*, an identity of causes of action, *identity of persons and parties* to the action, and identity of the quality or capacity of the parties suing or being sued." *Appeal of Coatesville Area Sch. Dist.*, 244 A.3d 373, 379 (Pa. 2021) (emphasis added) (additional quotation marks and citations omitted). Here, Prestige on 7th has failed to demonstrate identity of parties and issues.

Regarding identity among parties, there was no testimony before Common Pleas concerning the identities of the LLCs that own various properties for which *nunc pro tunc* tax abatements were sought. Based on the documents in the reproduced record, however, the various properties and their owners on which Prestige on 7th relies are as follows:

1417 (*i.e.*, the Property), 1422, and 1433 N. 7th St. – owned by Prestige on 7th. RR at 35 & 57.

1442 N. 7th St. – LLC owner not clearly established; variously listed as Prestige Design and Construction LLC,  RR at 46-48; Prestige on 7th, *id.* at 57; and Prestige Design on Jefferson LLC, *id.* at 72.

1443 N. 7th St. – LLC owner not indicated.  RR at 82.

1444 N. 7th St. – owned by Prestige Design on Jefferson LLC.  RR at 69-70.

1613 N. 7th St. – LLC owner not clearly established; alternately listed as owned by Prestige on Oxford LLC and Prestige Design and Construction LLC.[6]  RR at 46-48.

Thus, the only properties in addition to the Property of which Prestige on 7th has established ownership are those located at 1422 and 1433 N. 7th St., along with uncertain ownership of the property at 1442 N. 7th St.

While conceding before Common Pleas that the various previous abatement applications involved "different ownership entities," counsel for Prestige on 7th argued that "the management company is the same" and, therefore, that there is identity of parties.  *Id.* at 109.  We disagree.

The law is settled that corporations, including LLCs, even if they are solely owned by the same individual, are treated as separate legal entities; "a corporation is an entity irrespective of, and entirely distinct from, the persons who own it[]. . . ." *Mortimer v. McCool*, 255 A.3d 261, 277 (Pa. 2021).  Accordingly,

> [o]nce an individual, individuals, or an entity elect to establish a corporation to gain the benefits of that business form, such persons and entities are not free to blur the lines of the capacity in which they act as it may suit them, and

---

[6] At the argument and hearing before Common Pleas, counsel for Prestige on 7th stated that Prestige Design and Construction LLC was actually the management agent for the various owner LLCs.  RR at 109 & 128.  The record, however, does not establish that as a fact through evidence.  Moreover, as discussed below, it is not relevant to our disposition of this appeal.

> the courts must take care to maintain the necessary distinctions.

*Id.* at 278 (additional quotation marks and citation omitted).

Here, Prestige on 7th or Komerian, having gained the benefits of the corporate form to limit liability, may not disregard that form in order to take advantage of adjudications involving other LLCs that happen to be owned by Komerian, the same individual who owns Prestige on 7th, or that happen to be managed by the same management company, even if that management company also happens to be owned by Komerian, the same individual who owns the LLCs. Thus, in the previous Board adjudications relating to other properties on which Prestige on 7th relies, there is identity of parties only with respect to 1422 and 1433 N. 7th St. For the other properties, in which ownership by Prestige on 7th was not established, there is no established identity of parties. Therefore, *res judicata* is inapplicable to any decisions related to those properties.

As for identity of issues, the application for *nunc pro tunc* relief regarding the Property indicated that it related to a "Late Filed Abatement Application." RR at 35. The Board's initial denial of abatement also specifically indicated "Late Filing" as the reason for denial. *Id.* at 38-39. The record, however, does not establish the reasons for the Board's previous decisions granting *nunc pro tunc* relief in appeals concerning other properties. Further, the record does not indicate that late filing was the reason for the initial denial of the abatement application regarding any other property. The record information relating to 1613 N. 7th St. indicated that abatement was initially denied by the Office of Property Assessment, not for untimeliness, but because of "Ineligible improvements," with handwritten notations of "no permit attached – Deny" and "Deny No Permit [initials illegible] 7/17/18." RR at 50-51. The Board's letter decision regarding 1422 N. 7th

14

St. indicated that *nunc pro tunc* relief was granted, "Abatement App Processed as Timely." *Id.* at 55. It is not clear whether this notation regarding "App" meant that the *application* was being processed as timely or that the *appeal* from denial of the application was being processed as timely. *See id.* The documents regarding 1443 and 1444 N. 7th St. include letters granting *nunc pro tunc* relief with the same designation. *See id.* at 69 & 82. Regarding 1444 N. 7th St., however, the record also includes the initial denial of abatement from Office of Property Assessments indicating that the abatement application was denied due to late filing, as well as a transmittal letter from Prestige Design on Jefferson LLC to the Board stating that the relief sought was for filing a late abatement application. *Id.* at 70-73. Arguably, one may infer from the similar language in the decisions relating to 1422, 1443, and 1444 N. 7th St. that the relief sought was the same in all three. In any event, however, there is no indication regarding the Board's decisions regarding 1442, 1443, and 1444 N. 7th St. that the relief granted by the Board applied to *both* the application and the appeal as being processed as timely. Thus, there is no indication that the Board's decisions regarding 1422, 1443, and 1442 N. 7th St. shared an identity of issues with the instant case, where Prestige on 7th was untimely in filing *both* the application *and* the appeal from the application's denial. Regarding the rest of the properties, there is no way to determine from the record whether there is an identity of issues with the instant appeal. Therefore, the record does not establish the requisite identity of issues among the various abatement applications.

For these reasons, Common Pleas did not err by refusing to apply *res judicata* to the abatement application at issue.

15

## 2. Collateral Estoppel

Collateral estoppel may apply only where

> *the issue is the same as in the prior litigation*; the prior action resulted in a final judgment on the merits; the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Coatesville Area Sch. Dist.*, 244 A.3d at 379 (emphasis added) (additional citations omitted). Here, as discussed above, Prestige on 7th avers that the Board granted *nunc pro tunc* appeals in four previous matters involving other LLCs with the same owner as Prestige on 7th and involving identical issues. As explained above regarding *res judicata*, however, the record fails to establish such an identity of issues. Accordingly, we conclude that Common Pleas did not err in failing to apply collateral estoppel.

## IV. Conclusion

Based on the foregoing discussion, Common Pleas' order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Prestige Design and     :
Construction on 7th LLC     :
    :
From the Decision of City of     :
Philadelphia Board of Revision     :
of Taxes     :
    :
Appeal of: Prestige Design and     :    No. 629 C.D. 2022
Construction on 7th LLC     :

# **O R D E R**

AND NOW, this 22nd day of August, 2025, the May 17, 2022 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge